**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| ———————————————————— | ) |  |
| HMO LOUISIANA, INC., | ) |  |
| 5525 Reitz Ave. | ) |  |
| Baton Rouge, LA 70809 | ) |  |
|  | ) |  |
|  | ) | Case No. |
| *Plaintiff,* | ) |  |
|  | ) |  |
| v. | ) |  |
|  | ) |  |
| DEPARTMENT OF HEALTH AND | ) |  |
| HUMAN SERVICES | ) |  |
| Hubert H. Humphrey Building | ) |  |
| 200 Independence Avenue, S.W. | ) |  |
| Washington, D.C. 20201; | ) |  |
|  | ) |  |
| CENTERS FOR MEDICARE & | ) |  |
| MEDICAID SERVICES | ) |  |
| 7500 Security Boulevard | ) |  |
| Baltimore, MD 21244; | ) |  |
|  | ) |  |
| XAVIER BECERRA, in his official | ) |  |
| capacity as Secretary of the United States | ) |  |
| Department of Health and Human Services | ) |  |
| Hubert H. Humphrey Building | ) |  |
| 200 Independence Avenue, S.W., | ) |  |
| Washington, D.C., 20201; and | ) |  |
|  | ) |  |
| CHIQUITA BROOKS-LASURE, in her | ) |  |
| official capacity as Administrator, | ) |  |
| Centers for Medicare & Medicaid Services | ) |  |
| 7500 Security Boulevard | ) |  |
| Baltimore, MD 21244, | ) |  |
|  | ) |  |
| *Defendants.* | ) |  |
| ———————————————————— | ) |  |

## VERIFIED COMPLAINT FOR
## DECLARATORY AND INJUNCTIVE RELIEF

Plaintiff HMO Louisiana, Inc. ("HMOLA"), submits the following Verified Complaint

for declaratory and injunctive relief against Defendants Department of Health and Human

Services ("HHS"), the Centers for Medicare & Medicaid Services ("CMS"), Xavier Becerra, in his official capacity as Secretary of HHS, and Chiquita Brooks-LaSure, in her official capacity as Administrator of CMS (collectively, "Defendants" or "CMS"), and alleges as follows:

## INTRODUCTION

1.      This is yet another case in which CMS has miscalculated a plan's Star Ratings through arbitrary and unlawful actions that, if uncorrected, will again have devastating and irreparable consequences to the plan and its members.  Accordingly, HMOLA brings this action to obtain relief for the unlawful actions CMS has engaged in to calculate HMOLA's 2025 Star Ratings, which threaten to cause HMOLA to suffer immediate and irreparable harms to its reputation, market and competitive position, and more importantly, undermine HMOLA's effort to retain approximately 30,000[1] Medicare beneficiaries healthy and independent.

2.      CMS's actions, and its refusal to address them administratively and in compliance with its own regulations, are a disturbing, if textbook, example of rigid and unreasonable agency decision-making that should be set aside under the Administrative Procedure Act ("APA").

3.      HMOLA is one of the nation's Medicare Advantage health plans ("MA Plans"), currently serving approximately 30,000 members in Louisiana.

4.      MA Plans, like HMOLA, receive annual Star Ratings from CMS for their contracts based on "health and drug plan quality and performance measures" that are used by Medicare beneficiaries to shop for plans.

5.      CMS calculates the Star Ratings based on a clear and unambiguous methodology that includes the consideration of all relevant data for a given contract.  That methodology and

---

[1] As of October 15, 2024, HMOLA's current enrollment of Medicare beneficiaries is 29,890.

related requirements are set forth in specific regulations that CMS promulgated and must abide by.

6.     Among other requirements, CMS has regulations that address how to calculate Star Ratings for MA Plans when they consolidate multiple MA contracts under a single surviving H contract.

7.     Fluctuations in an MA Plan's Star Ratings can occur in the short term following contract consolidation.  Thus, during the first two years following consolidation, Star Ratings for the surviving contract are based on both the surviving and consolidated contracts' data.

8.     CMS further implements an analytical adjustment, referred to as the Categorical Adjustment Index ("CAI"), to a contract's Star Ratings to mitigate disparities within contract performance.

9.     On January 1, 2024, HMOLA's parent company, Louisiana Health Service & Indemnity Company d/b/a Blue Cross and Blue Shield of Louisiana ("BCBSLA"), consolidated contracts belonging to HMOLA (contract H6453) and another subsidiary (contract H5576), with HMOLA's H6453 contract surviving.

10.    Consistent with its regulations, CMS should have based its Star Ratings for HMOLA's contract on data from both H5576 and H6453.

11.    But in calculating the 2025 Star Ratings for HMOLA, CMS applied an entirely different and new methodology that was not subject to any formal notice and comment rulemaking, and that directly contradicted the plain text of its own regulation.

12.    Instead of using data from both contracts to calculate 2025 Star Ratings, CMS only considered data from the surviving contract H6453 for two Part C and D measures.  CMS's own system in fact *prevented* HMOLA from submitting data for two measures for contract

H5576.  And CMS further incorrectly calculated the CAI factor by only considering enrollment data from the surviving contract.

13.     When HMOLA confronted the agency about its use of incomplete data, CMS asserted it was justified to do so for vague and incorrect reasons.

14.     The result was catastrophic: HMOLA's 2025 Star Ratings dropped precipitously, from 4 to 3.5 Stars.

15.     Indeed, CMS intends to publicly disclose HMOLA's unlawfully calculated Star Ratings on its public website on October 15, 2024, which if it proceeds in full, will result in irreparable harm to HMOLA's reputation, goodwill, and competitive position, as well as impair its ability to attract beneficiaries.

16.     CMS's failure to adhere to its articulated methodology to calculate HMOLA's Star Ratings constitutes an unexplained and unreasonable departure from its own regulation.

17.     CMS further irrationally and unreasonably considered incomplete data when calculating HMOLA's 2025 Star Ratings.

18.     CMS's refusal to follow its own promulgated methodology and reliance on flawed data are arbitrary and capricious agency actions in stark violation of the APA.

19.     CMS's 2025 Star Ratings for HMOLA should be vacated, and this matter should be remanded to the agency to adjust HMOLA's 2025 Star Ratings based on a proper application of its regulation and use of complete data.

20.     To prevent HMOLA from suffering irreparable harm from CMS's unlawful conduct, and in light of the public release of the 2025 Star Ratings, the Court should expedite the resolution of this matter on the merits, restrain CMS from disseminating or relying on its

improper Star Ratings for HMOLA, and require CMS to announce, publish, and distribute HMOLA's 2024 Star Ratings until it correctly recalculates HMOLA's 2025 Star Rating.

## PARTIES

21.     HMOLA is a Louisiana business corporation, with its principal place of business in Baton Rouge, Louisiana, and is a wholly-owned subsidiary of BCBSLA, which is a non-profit, mutual insurance company.

22.     Defendant HHS is the department of the federal government ultimately responsible for the federal Medicare and Medicaid programs.

23.     HHS has delegated its authority to administer the Medicare and Medicaid programs to Centers for Medicare and Medicaid Services.  *See* 66 Fed. Reg. 35437.

24.     Defendant CMS is a federal agency within HHS with the primary oversight responsibility for the Medicare program and the federal portion of the Medicaid program.  It was created by the Reorganization Act of March 9, 1977.  *See* 66 Fed. Reg. 35437.

25.     Defendant Xavier Becerra is named in his official capacity as the Secretary of HHS.  *See* 42 C.F.R. § 405.1136(d)(1).

26.     Defendant Chiquita Brooks-LaSure is named in her official capacity as Administrator of the Centers for Medicare and Medicaid Services.  The Administrator is responsible for the administration of the Medicare program, including the Star Ratings.  *Id.*

## JURISDICTION & VENUE

27.     This Court has jurisdiction over this case pursuant to 28 U.S.C. § 1331 because this action arises under the APA, 5 U.S.C. §§ 701 *et seq.*, and 42 U.S.C. §§ 1395 *et seq.*

28.     Venue is proper in this Court under 28 U.S.C. § 1391(e) because this is an action against officers and agencies of the United States and a substantial part of the events giving rise to HMOLA's claims occurred in this District.

29.     The Complaint is timely under 28 U.S.C. § 2401(a).

## REGULATORY AND FACTUAL BACKGROUND

### *The Medicare Program And Star Ratings*

30.     The Medicare program, authorized under Title XVIII of the Social Security Act ("SSA"), is a federal program that provides health insurance benefits for Americans aged 65 years and older and certain disabled persons.  *See* 42 U.S.C. §§ 1395 *et seq.*

31.     The Centers for Medicare and Medicaid Services is the federal agency responsible for administering the Medicare program.

32.     Individuals enrolled in Medicare may elect to receive their benefits under Part C of the Medicare program, commonly referred to as the "Medicare Advantage" program, as an alternative to original Medicare.

33.     Under Part C, CMS contracts with private insurance payors, commonly known as Medicare Advantage Plans ("MA Plans"), to provide and arrange for Medicare-covered benefits for Medicare beneficiaries who enroll in their benefit plan.  *See* 42 C.F.R. § 422.4.

34.     Besides arranging and paying the Medicare-covered benefits of Medicare beneficiaries, MA Plans typically provide supplemental benefits as well as lower co-payments and other cost sharing, which further reduce the cost of covered services for beneficiaries.

35.     The Medicare Advantage program is intended to shift the financial risk of providing health care to beneficiaries from the federal government to the privately run MA Plans in exchange for a per-member, per-month payment.

36.     MA Plans that are better at keeping their members healthy, by effectively managing their care and providing important related services, receive higher Star Ratings, and overall, perform better in the marketplace.  *See generally* 42 C.F.R. § 422.160.

37.     By providing additional benefits beyond those covered by Medicare, MA Plans compete with original Medicare and with one another to convince beneficiaries to select their plan.

38.     In an effort to encourage MA Plans to offer high quality plans and to assist Medicare beneficiaries in selecting a plan, CMS studies and surveys MA Plans for quality, compliance, and other metrics to develop numerical ratings for each MA Plan ("Star Ratings").

39.     The Star Ratings are based on a five-star scale, with 1 star being the lowest rating and 5 stars being the highest.  *See* 42 C.F.R. § 422.162(b); 42 C.F.R. § 422.166(h)(1)(ii).

40.     The Star Ratings are designed to be "a true reflection of the plan's quality" and must be based on data that is "complete, accurate, reliable, and valid."  83 Fed. Reg. 16440, 16521 (Apr. 16, 2018).

41.     Star Ratings information is widely available to Medicare beneficiaries to consider when choosing to enroll in an MA Plan.  These measures are particularly important, as they allow beneficiaries to compare health plans based on quality.

42.     CMS prominently displays Star Ratings in its online and print resources on available MA Plans as required under the SSA.  *See* 42 U.S.C. § 1395w–21.

43.     Indeed, through the online Medicare Plan Finder tool, CMS displays MA Plans in highest to lowest Star Ratings order to prospective members, with the express purpose of guiding beneficiaries to higher-rated plans first.

44.     CMS also introduced the Categorical Adjustment Index ("CAI") to address the average within-contract disparity in performance among beneficiaries who receive a low-income subsidy, are dual eligible, and/ or have a disability.[2]

45.     CMS then adjusts a plan's Star Ratings upwards or downwards based on the percentage of these beneficiaries.

46.     The Star Ratings also impact the amount of funds CMS will pay to each MA Plan.

47.     Under Section 1853(o) of the SSA, CMS allocates quality bonuses to MA Plans based on their Star Ratings and awards additional funds to MA Plans rated at or above 4 stars. *See* 42 U.S.C. § 1395w–23.

48.     MA Plans use these bonuses, which are often in the tens, if not hundreds of millions, of dollars, to provide additional benefits and services to further improve care to their members.

49.     Conversely, MA Plans that consistently receive Star Ratings below 3 stars may be terminated from the Medicare Advantage program altogether.  *See* 42 C.F.R. § 422.162(b); 42 C.F.R. § 422.166(h)(1)(ii).

50.     Thus, the Star Ratings have tremendous value to MA Plans and are strong incentives for these plans to provide quality care and comprehensive benefits to their members, allow them to compete in the marketplace, receive higher compensation, and even remain eligible to continue to participate in the Medicare Advantage program.

---

[2]  *See Categorical Adjustment Index (CAI) Methodology*, Ctrs. for Medicare & Medicaid Servs., available at https://www.cms.gov/Medicare/Prescription-Drug-Coverage/PrescriptionDrugCovGenIn/Downloads/Supplement-for-Categorical-Adjustment-Index-.pdf.

***Calculation Of Star Ratings Generally***

51.      To calculate Star Ratings, CMS must use clear and unambiguous calculations established in its regulations.  *See* 42 C.F.R. § 422.162(b); 42 C.F.R. § 422.166(h)(1)(ii).

52.      Star Ratings for MA Plans are based on a calculation of numerous performance measures designed to assess member satisfaction and receipt of care, including but not limited to preventative health services, management of long-term conditions, member experiences with the health plan, member complaints, and customer service.[3]

53.      CMS publishes these measures and the specifications that it uses to develop its Star Ratings.  MA Plans (including HMOLA) use them to target areas of improvement and investment to ensure they are maximizing their services for beneficiaries, and in turn, earn higher Star Ratings.

54.      Any changes to the Star Ratings calculations can have serious, and sometimes catastrophic, impacts on MA Plans.

55.      When Star Ratings fall due to changes in criteria and calculation methodology, MA Plans may be disqualified from receiving quality bonus payments and can even be removed from the Medicare Advantage program altogether, resulting in devastating financial and coverage consequences for MA Plans and beneficiaries.

56.      Therefore, in developing each MA Plan's Star Ratings, CMS must treat each MA Plan "fairly and equally," judging them only on matters that are "under the control of the health or drug plan," in a system that will "minimize unintended consequences" adopted through a

---

[3] *See* Medicare 2025 Part C & D Star Ratings Technical Notes at 30–105, CENTERS FOR MEDICARE AND MEDICAID SERVICES, https://www.cms.gov/files/document/2025-star-ratings-technical-notes.pdf.

"process of developing [a ratings methodology that] is transparent and allows for multi-stakeholder input."  83 Fed. Reg. 16440, 16521.

57.     CMS calculates Star Ratings based on a rigid methodology – set forth in its own regulations – that focuses on "health and drug plan quality and performance measures."  42 C.F.R. § 422.166; Medicare 2025 Part C & D Star Ratings Technical Notes at 3–5 & 30–105.

58.     Measures used to calculate Star Ratings can be grouped into two categories: those from the Consumer Assessment of Healthcare Providers and Systems surveys ("CAHPS"), and those from "non-CAHPS" sources.  Medicare 2025 Part C & D Star Ratings Technical Notes at 3 & 30–105.

59.     CAHPS measures relate to member experience with healthcare providers, services, and plans, deriving data from "surveys that ask consumers and patients to evaluate the interpersonal aspects of health care."  42 C.F.R. § 422.162(a).

60.     Non-CAHPS measures derive data from sources other than CAHPS surveys.  *See* Medicare 2025 Part C & D Star Ratings Technical Notes, at 5.  Non-CAHPS measures consist of data from, among other sources, the Healthcare Effectiveness Data and Information Set[4] and CMS's Part C and D reporting requirements.  *Id.*

61.     Each CAHPS and non-CAHPs measure is given a numeric score.  *Id.* at 3.

62.     The agency then determines the "cut point" for each measure – that is, the range of scores that correspond with particular Star Ratings.  Together, the CAHPS and non-CAHPS measure scores and cut points are combined to develop each MA Plan's Star Ratings.

---

[4]  The Healthcare Effectiveness Data and Information Set ("HEDIS") is a tool used by more than 90 percent of U.S. health plans to measure performance on important dimensions of care and service.  More than 190 million people are enrolled in health plans that report quality results using HEDIS.  *See* Healthcare Effectiveness Data and Information Set (HEDIS) - Healthy People 2030 | health.gov (last visited Oct. 15, 2024).

***CMS Adopts The Categorical Adjustment Index As***
***Part Of The Star Ratings Methodology***

63.     Because Star Ratings are awarded on a contract level, CMS adopted the CAI to address disparities in performance by MA contracts with multiple plans.

64.     Specifically, the CAI factor adjusts a contract's Star Ratings upwards or downwards to adjust for the average within-contract disparity in performance for Low Income Subsidy/Dual Eligible ("LIS/DE") beneficiaries and disabled beneficiaries.  *See* Medicare 2025 Part C & D Star Ratings Technical Notes at 15–17.

65.     The CAI value or factor depends on the contract's percentage of beneficiaries with LIS/DE and the contract's percentage of beneficiaries with disabled status. *Id.*

66.     The CAI factor is then applied to the contract's Star Ratings.  42 C.F.R. § 422.166(f)(2).

67.     In 2024, CMS promulgated a regulation to establish a new methodology for the calculation of CAI factors for contracts that have recently consolidated.  *See* 89 Fed. Reg. 30448; 42 C.F.R. § 422.166(f)(2).

68.     When consolidation involves "two or more contracts for health or drug services of the same plan type under the same parent organization, the enrollment data . . . are combined *across the surviving and consumed contracts* in the consolidation."  42 C.F.R. § 422.166(f)(2)(B)(1) (emphasis added).

69.     Thus, under the new regulation, CMS must use the enrollment data of the surviving and consumed contracts to determine the consolidated contract's final adjustment category, which is then used to finalize the consolidated contract's Star Ratings.

70.     If CMS's resulting calculation results in a positive number, then it will increase the Star Ratings for the consolidated contract.  Medicare 2025 Part C & D Star Ratings Technical Notes at 16–17.

71.     CMS had to apply its revised CAI methodology immediately, meaning that the methodology would be applied to 2025 Star Ratings and going forward.  *Compare* 42 C.F.R. §§ 422.166(f)(1) & (3), *with* 42 C.F.R. § 422.166(f)(2).

72.     CMS acknowledged this fact in its own regulatory commentary, in which it provided an example of the CAI factor methodology applied to 2025 Star Ratings.  *See* 89 Fed. Reg. 30644.

### *CMS's Arbitrary Departure From Its Own Regulations To Calculate The 2025 Star Ratings Caused HMOLA's Star Ratings To Drop*

73.     Based on its high-quality care and services, HMOLA has historically received top-tier Star Ratings that are critical to its operations and ability to serve its members.

74.     HMOLA received Star Ratings of 4.5 out of 5 in 2023 and 2024.

75.     On January 1, 2024, BCBSLA, the parent corporation of HMOLA, consolidated contracts H5576 and H6453.  Following that contract consolidation, HMOLA's contract H6453 survived.

76.     In September 2024, CMS notified HMOLA and other MA Plans of the second plan preview for their 2025 Star Ratings.

77.     HMOLA's preliminary 2025 Star Ratings dropped precipitously to *3.5 Stars* – instead of its expected 4.0 Stars.

78.     HMOLA immediately contacted CMS for an explanation of the sudden and surprising drop in its Star Ratings.

79.     In response, CMS advised that "the change in methodology for calculating the CAI in the case of contract consolidations [was] effective beginning with the 2027 Star Ratings." *See* Exhibit ("Ex.") 1, CMS Correspondence on Oct. 3, 2024.

80.     That is to say, in computing HMOLA's 2025 Star Ratings and CAI adjustment factor, CMS only used enrollment data for one of the MA contracts, contract H6453, instead of using enrollment data for both MA contracts, including contract H5576.

81.     But CMS's own regulation does not provide for any deferred implementation of the CAI.  *See* 42 C.F.R. § 422.166(f)(2).

82.     To the contrary, the relevant part of the regulation *omits* a delayed implementation, unlike other provisions.  *Compare* 42 C.F.R. §§ 422.166(f)(1) & (3), *with id.* § 422.166(f)(2).

83.     Nevertheless, CMS departed from the express methodology set forth in the regulation and refused to consider enrollment data from the surviving and consumed contract in calculating the CAI adjustment factor.

84.     Thus, HMOLA's 2025 Star Ratings significantly dropped as a result of CMS's failure to apply its own regulations.

85.     Had CMS followed the regulation as written, HMOLA's Star Ratings would have been 4 Stars, rather than 3.5 Stars.

86.     CMS's failure to follow its own regulation resulted in the very thing that the CAI was intended to prevent: fluctuations in Star Ratings for MA contracts with multiple plans that consolidate.

87.     HMOLA alerted CMS to its flawed methodology, explaining the regulation requires CMS to use enrollment data from the surviving and consumed contracts in the

consolidation.  *See* Ex. 2, Notification of Calculation Errors on Sept. 12, 2024; 42 CFR § 422.166(f)(2)(i)(B)(1).

88.     HMOLA also advised CMS that this flawed approach undermines the purpose and policy of the regulation to obtain a complete representation of plan performance when calculating Star Ratings.  *See* Ex. 2.

89.     Calculating the CAI factor for a newly consumed contract with only data from the surviving contract is inconsistent with the plain and express language of the regulation, which calls for use of enrollment data from both the surviving *and consumed* contract.  *See* 42 C.F.R. §§ 422.166(f)(2) & 422.166(f)(2)(i)(B)(1).

90.     It also frustrates the very purpose of CMS's CAI factor, which is to mitigate within-contract performance disparities by preventing dramatic swings in Star Ratings post-consolidation that can have massive adverse impacts on MA Plans and beneficiaries.

91.     By its express terms, CMS's regulation does not permit the agency to delay implementation of the CAI factor to consolidated plans' Star Ratings.  *See* Ex. 2; 42 C.F.R. § 422.166(f)(2).

92.     When confronted with the flaws in its approach, CMS asserted that statements in its final rule related to delayed implementation somehow permitted its departure from the regulation's actual text.  Ex. 1; 89 Fed. Reg. 30644; 89 Fed. Reg 30645.

93.     CMS further asserted that this methodology was properly delayed until the calculation of the 2027 Star Ratings, *see* Ex. 1, but the plain text of the regulation did not defer implementations of the CAI factor until 2027, 42 C.F.R. § 422.166(f)(2).

94.     Indeed, CMS's own regulatory commentary provides an example of the CAI factor methodology using the *2025 Star Ratings* – a point that the CMS did not even acknowledge in responding to HMOLA.  *See* 89 Fed. Reg. 30644.

95.     Despite HMOLA's efforts to resolve its concerns informally, CMS has doggedly refused to meaningfully engage with HMOLA or reconsider its flawed approach and grave impacts of it.

### *CMS Used Other Flawed And Improper Data To Calculate HMOLA's Star Ratings*

96.     CMS also relied on incomplete data for two process measures – D11 "MTM Program Completion Rate for CMR" and C05 "Special Needs Plan (SNP) Care."

97.     CMS only considered the data submitted by the surviving contract, H6453, for these two process measures.

98.     When contracts are consolidated, the Star Ratings for the surviving contract for the two years after consolidation is determined through the enrollment-weighted average of the measures of the consumed contract and surviving contract for all measures except improvement measures.  *See* 42 CFR § 422.162(b)(3)(ii); Medicare 2025 Part C & D Star Ratings Technical Notes, Attachment B, at 114.

99.     Thus, to accurately calculate the Star Rating for contract H6453, which was consolidated in January 2024, CMS had to include data from contract H5576 and contract H6453 in its calculations.

100.    However, only data from H6453 was considered in the calculation of D11 and C05.

101.    In fact, HMOLA attempted to submit information on H5576 and H6453 to CMS for use in calculating its Star Ratings.

102.    Because of the limitations with CMS's own portal, HMOLA could only submit information for these measures for the surviving contract, H6453, and could not provide data for the consumed contact, H5576.

103.    There was no submission option available on CMS's portal to submit the necessary data for the subsumed contract, H5576.

104.    When HMOLA brought this technical error to CMS's attention, CMS summarily dismissed it by noting it had not received data for these measures for the consumed contract and was "following the technical specifications for these measures."  Ex. 1.

105.    CMS overlooked these errors in calculating HMOLA's Star Ratings, which had the predicable and dire consequence of lowering its ratings.

106.    The consideration of incomplete data for just one of these two measures triggered a reduction in HMOLA's Star Ratings.

### *Defendants' Unlawful Conduct*
### *Will Cause HMOLA to Suffer Irreparable Harm*

107.    CMS's refusal to abide their own regulation threatens to cause HMOLA to suffer severe and irreparable harm.

108.    By applying some newfound methodology to calculate CAI factors for consolidated contracts, rather than its actual regulation, Defendants have used incomplete data to calculate HMOLA's Star Ratings.

109.    Defendants have further improperly refused to consider complete data for process measures D11 and C05.

110.    As a result, Defendants have issued fundamentally flawed Star Ratings for HMOLA of 3.5 Stars.

111.    The correction of just one of these two errors would increase HMOLA's final Star Ratings from 3.5 to 4.0.

112.    The impact of that significant drop in HMOLA's Star Ratings is serious and substantial.

113.    The reduced Star Ratings have undermined HMOLA's competitive position, reputation, and goodwill, and impacted its ability to compete against other plans, including those that may have benefited from Defendants' flawed and unlawful methodology.

114.    Additionally, as a result of CMS's flawed rating methodology and reliance on partial data, beneficiaries may, based on its Star Ratings, mistakenly conclude HMOLA's offerings are inferior or lower in quality compared to the offerings of other plans.

115.    And by reducing HMOLA's 2025 Star Ratings, CMS has rendered HMOLA ineligible for quality bonus payments in 2026, thereby impacting its operations and ability to provide enhanced benefits and lower premiums to beneficiaries.

116.    HMOLA has tried to resolve the parties' dispute informally to no avail.  Exs. 1–3.

117.    Left with no other option, HMOLA turns to this Court to require Defendants to comply with federal law, vacate the flawed Star Ratings assigned to HMOLA, and enjoin them from disclosing and relying on that unlawful rating in connection with any other agency decision.

## COUNT I
### (Violation Of 5 U.S.C. § 706(2)(A) – Against All Defendants)
### (Use Of Surviving Contract Enrollment Data)

118.    HMOLA realleges the allegations set forth in Paragraphs 1 through 117 of this Complaint as if fully set forth herein.

119.    Defendants' decision to use solely the surviving contract enrollment data to calculate HMOLA's CAI factor and apply such to HMOLA's 2025 Star Ratings is a final agency action made reviewable by 5 U.S.C. § 706(2) and 42 C.F.R. § 422.166(f)(2).

120.    HMOLA is adversely affected and aggrieved by Defendants' action.

121.    Defendants' decision not to use both surviving and consumed contract enrollment data to calculate CAI factors is arbitrary and capricious and contrary to law.

122.    Defendants failed to engage in reasoned decision-making; to reasonably (or at all) explain their departure from CMS's own regulation; or to provide an adequate and reasonable explanation for their decision.

123.    Defendants' action flies in the face of the plain and unambiguous text of their own regulation and undermines the policy and purpose of that regulation to alleviate disparities between MA plans in the same MA contract, which in turn harms MA beneficiaries.

124.    Defendants acted unreasonably and contrary to law by deploying a methodology that is inconsistent with the approach mandated by their regulation, and was never disclosed to regulated parties – let alone adopted pursuant to any proper rulemaking proceedings.

125.    As a result, Defendants' decision is arbitrary, capricious, and otherwise not in accordance with the law in violation of 5 U.S.C. § 706(2)(A).

126.    HMOLA has suffered and will continue to suffer irreparable harm as a result of Defendants' violations of 5 U.S.C. § 706(2)(A).

127.    HMOLA is entitled to injunctive and declaratory relief to remedy Defendants' unlawful conduct, as well as all other relief as set forth in its Prayer for Relief.  *See* 5 U.S.C. § 705.

<u>**COUNT II**</u>
**(Violation Of 5 U.S.C. § 706(2)(A) – Against All Defendants)**
**(Failure To Consider H5576 Data For Measure D11)**

128.    HMOLA realleges the allegations set forth in Paragraphs 1 through 117 of this Complaint as if fully set forth herein.

129.    CMS's  failure to consider D11 data from H5576 to calculate HMOLA's Part D 2025 Star Ratings is a final agency action made reviewable by 5 U.S.C. § 706(2) and 42 C.F.R. § 422.162(b)(3)(ii).

130.    HMOLA is adversely affected and aggrieved by the use of this incomplete data measure.

131.    Defendants' decision not to consider H5576's data relating to Measure D11 is arbitrary and capricious and contrary to law.

132.    Defendants failed to engage in a reasoned decision-making; to consider important aspects of the problem they believed they faced; to consider the impact that the incomplete data would have on HMOLA's Star Ratings; to provide an adequate explanation for their decision to consider incomplete data to determine HMOLA's Star Ratings; and considered the incomplete data even though contrary evidence demonstrated it should never have been considered as is.

133.    The use of this data to calculate HMOLA's 2025 Star Ratings is arbitrary, capricious, and otherwise not in accordance with the law in violation of 5 U.S.C. § 706(2)(A).

134.    HMOLA has suffered and will continue to suffer irreparable harm as a result of Defendants' violations of 5 U.S.C. § 706(2)(A).

135.    HMOLA is entitled to injunctive and declaratory relief to remedy Defendants' unlawful conduct, as well as all other relief as set forth in its Prayer for Relief.  *See* 5 U.S.C. § 705.

<u>**COUNT III**</u>
**(Violation Of 5 U.S.C. § 706(2)(A) – Against All Defendants)**
**(Failure To Consider H5576 Data For Measure C05)**

136.   HMOLA realleges the allegations set forth in Paragraphs 1 through 117 of this Complaint as if fully set forth herein.

137.   CMS's failure to consider C05 data from H5576 to calculate HMOLA's Part D 2025 Star Ratings is a final agency action made reviewable by 5 U.S.C. § 706(2) and 42 C.F.R. § 422.162(b)(3)(ii).

138.   HMOLA is adversely affected and aggrieved by the use of this incomplete data measure.

139.   Defendants' decision to not consider H5576's data relating to Measure C05 is arbitrary and capricious and contrary to law.

140.   Defendants failed to engage in a reasoned decision-making; to consider important aspects of the problem they believed they faced; to consider the impact that the incomplete data would have on HMOLA's Star Ratings; to provide an adequate explanation for their decision to consider incomplete data to determine HMOLA's Star Ratings; and considered the incomplete data even though contrary evidence demonstrated it should never have been considered as is.

141.   The failure to consider C05 data from H5576 to calculate HMOLA's 2025 Star Ratings is arbitrary, capricious, and otherwise not in accordance with the law in violation of 5 U.S.C. § 706(2)(A).

142.   HMOLA has suffered and will continue to suffer irreparable harm as a result of Defendants' violations of 5 U.S.C. § 706(2)(A).

143.    HMOLA is entitled to injunctive and declaratory relief to remedy Defendants' unlawful conduct, as well as all other relief as set forth in its Prayer for Relief.  *See* 5 U.S.C. § 705.

## COUNT IV
### Declaratory Judgment

144.    HMOLA realleges and incorporates Paragraphs 1 through 117 as if fully set forth herein.

145.    CMS's calculation of the 2025 Star Ratings is a final agency action made reviewable by 5 U.S.C. § 706(2).

146.    HMOLA is adversely affected and aggrieved by the calculation of its Star Ratings, and flawed calculation and application of the CAI factor.

147.    An actual controversy has arisen and exists between HMOLA and Defendants regarding Defendants' calculation of HMOLA's 2025 Star Ratings using incomplete measure data and application of an erroneous CAI factor.

148.    HMOLA requests a declaration from this Court under 28 U.S.C. § 2201 that Defendants' calculation is arbitrary and capricious.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff HMOLA prays that this Court enjoin HMOLA's 2025 Star Ratings and remand this matter to the agency for further consideration.  Additionally, HMOLA requests the Court to:

1.    Adopt an expedited schedule to resolve the merits of this Complaint;

2.    Declare that:

- Defendants' calculation of the CAI and subsequent application to HMOLA's 2025 Star Ratings directly conflicts with CMS's regulatory requirements and is arbitrary and capricious in violation of 5 U.S.C. § 706(2)(A);

- Defendants' consideration of incomplete D11 measure data to calculate HMOLA's 2025 Star Ratings is arbitrary and capricious in violation of 5 U.S.C. § 706(2)(A);

- Defendants' consideration of incomplete C05 measure data to calculate HMOLA's 2025 Star Ratings is arbitrary and capricious in violation of 5 U.S.C. § 706(2)(A); and

- Defendants must recalculate HMOLA's 2025 Star Ratings in compliance with CMS's regulations, specifically taking into account data from H5576 for Measures D11 and C05 and taking into consideration data from both the surviving and consumed contracts for the CAI factor.

3.   An emergency temporary restraining order and preliminary injunction:

- Preventing Defendants from announcing, publishing, or distributing HMOLA's erroneous 2025 Star Ratings;

- Preventing Defendants from relying on HMOLA's 2025 Star Ratings in connection with any further agency action, including with but not limited to quality bonus payment determinations; and

- Requiring Defendants to announce, publish, and distribute HMOLA's 2024 Star Ratings until they correctly recalculate HMOLA's 2025 Star Rating.

4.   Award HMOLA its reasonable attorney's fees and costs, as permitted by law; and

5.   Grant such other further relief as this Court deems just and proper.

Dated: October 17, 2024

By: _____
Paul Werner (D.C. Bar #482637)
SHEPPARD, MULLIN, RICHTER &
HAMPTON LLP
2099 Pennsylvania Ave N.W., Suite 1000
Washington, D.C. 20006
Tel. 202-747-1900
pwerner@sheppardmullin.com

*Counsel for Plaintiff*

## DECLARATION

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the

United States of America that the factual statements contained in the Verified Complaint related

to HMOLA are true and correct to the best of my knowledge and belief.

Sheldon Faulk
SVP and COO, Government Business
Executed on October 16, 2024