UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| HMO LOUISIANA, INC., | |
| *Plaintiff,* | |
| v. | Civil Action No. 24-2931 (CRC) |
| DEPARTMENT OF HEALTH AND HUMAN SERVICES, et al., | |
| *Defendants*. | |

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY**
**<u>JUDGMENT AND DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT</u>**

## TABLE OF CONTENTS

Table of Contents ................................................................................................................ i

Table of Authorities ............................................................................................................ ii

INTRODUCTION .............................................................................................................. 1

BACKGROUND ................................................................................................................ 2

    I.     Statutory and Regulatory Background ...................................................................... 2

          A.     Special Needs Plan Measures ...................................................................... 6

          B.     Star Ratings Calculation Methodology ........................................................ 7

          C.     Star Ratings Following Consolidation .......................................................... 8

    II.    Factual And Procedural Background ........................................................................ 9

STANDARD OF REVIEW ................................................................................................ 10

ARGUMENT .................................................................................................................... 12

    I.     CMS Calculated HMOLA's Consolidated Contract Score by Following Its Regulations ............................................................................................................ 12

    II.    CMS's Calculation of HMOLA's Consolidated Contract Score Is Consistent with the Statute .............................................................................................................. 15

    III.   HMOLA Is Not Entitled to Relief ........................................................................ 17

CONCLUSION .................................................................................................................. 18

# TABLE OF AUTHORITIES

Cases

Bowman Transp. Inc. v. Ark.-Best Freight Sys., Inc.,
    419 U.S. 281 (1974) ........................................................................................ 11

County of Los Angeles v. Shalala,
    192 F.3d 1005 (D.C. Cir. 1999) ..................................................................... 10

Ctr. for Food Safety v. Salazar,
    898 F. Supp. 2d 130 (D.D.C. 2012) ............................................................... 11

Dist. Hosp. Partners, L.P. v. Burwell,
    786 F.3d 46 (D.C. Cir. 2015) ......................................................................... 11

Gentiva Healthcare Corp. v. Sebelius,
    857 F. Supp. 2d 1 (D.D.C. 2012) ................................................................... 10

Marsh v. Or. Nat. Res. Council,
    490 U.S. 360 (1989) ....................................................................................... 11

Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.,
    463 U.S. 29 (1983) ......................................................................................... 11

Petal Gas Storage, L.L.C., v. FERC,
    496 F.3d 695 (D.C. Cir. 2007) ....................................................................... 11

Se. Ala. Med. Ctr. v. Sebelius,
    572 F.3d 912 (D.C. Cir. 2009) ....................................................................... 10

Smirnov v. Clinton,
    806 F.Supp.2d 1 (D.D.C. 2011) ..................................................................... 17


Statutes, Regulations, and Federal Register

5 U.S.C. § 706 ........................................................................................... 10, 11

42 U.S.C. § 1395 ................................................................................................ 2

42 U.S.C. § 1395c .................................................................................... 2, 3, 4

42 U.S.C. § 1395w-21 ....................................................................................... 3

42 U.S.C. § 1395w-22 ....................................................................................... 3

42 U.S.C. § 1395w-23 ................................................................................ 3, 4, 5

42 U.S.C. § 1395w-24 .................................................................................. 3, 5

42 C.F.R. § 422.162 .................................................................................. passim

42 C.F.R. § 422.166 ......................................................................................... 12

42 C.F.R. § 422.254 ........................................................................................... 3

42 C.F.R. § 422.258 ................................................................................................ 3

42 C.F.R. § 422.260 ............................................................................................. 3, 5

42 C.F.R. § 422.516 ................................................................................................ 7

83 Fed. Reg. 16,440 ............................................................................................... 4

83 Fed. Reg. 16,520 ....................................................................................... 4, 6, 15

83 Fed. Reg. 16,525 ............................................................................................... 6

Pursuant to Federal Rule of Civil Procedure 56(a), Defendants, by and through undersigned counsel, respectfully cross-move for summary judgment. A memorandum of points and authorities in support of this cross motion and in opposition to Plaintiff's motion for summary judgment (ECF No. 17) follows.

## INTRODUCTION

Pursuant to Congress's mandate, the Centers for Medicare & Medicaid Services ("CMS") calculates Medicare Advantage Star Ratings on a one through five-star scale in half-star increments, which allows Medicare beneficiaries to comparison shop among hundreds of private health insurance plans. CMS bases Medicare Advantage Organizations' Star Ratings scores on their contracts' performance on up to forty unique quality measures. This matter concerns CMS's Star Ratings calculation for one such measure: C05—Special Needs Plan Care Management. The issue in this case is whether CMS correctly calculated Plaintiff's C05 score for 2025 when the contract being evaluated is a result of the consolidation of multiple contracts.

On January 1, 2024, Plaintiff HMO Louisiana's ("HMOLA") parent company, Blue Cross Blue Shield of Louisiana ("BCBSLA"), consolidated two of its contracts, one that covered Special Needs Plans in 2023 and one that did not. The contract that did not cover Special Needs Plans in 2023 became the "surviving contract" following the consolidation, and the contract that did cover Special Needs Plans became the "consumed contract." The surviving, consolidated contract offered Special Needs Plans in 2024 and offers Special Needs Plans for 2025. The 2025 Star Ratings at issue here, however, are calculated based on 2023 measurement-year data, so the issue is how to evaluate the consolidated contract for 2025 on measure C05 when, in 2023, the consumed contract included Special Needs Plans and the surviving contract did not. In this situation, under CMS regulations, CMS assigns scores to the consolidated contract based on the "enrollment-weighted mean of the measure scores of the surviving and consumed contracts" for the first and

second years following the consolidation.  42 C.F.R. §§ 422.162(b)(3), 423.182(b)(3).  That is precisely what CMS did here.

CMS followed its regulations when evaluating Plaintiff HMOLA's consolidated contract on measure C05.  Because the surviving contract had no C05 score, the enrollment mean of the measure scores of the surviving and consumed contracts equaled the C05 score of the consumed contract.  HMOLA contends that because its consolidation terminated the consumed contract on the date of the consolidation, the consumed contract's scores should have been excluded from measure C05.  But under applicable regulations, while the two contracts are combined into a single contract for the start of the subsequent contract year, scores on applicable quality measures, such as measure C05, from the consumed contract are factored into the consolidated contract scores for two years following the consolidation.  Nothing about CMS's calculation of the Star Ratings was arbitrary or capricious; CMS merely followed rules it had properly promulgated, and HMOLA's dissatisfaction with the result does not render CMS's decision improper.

## BACKGROUND

### I.    Statutory and Regulatory Background

Title XVIII of the Social Security Act, 42 U.S.C. § 1395 *et seq*. ("Medicare statute"), establishes the Medicare program, a federally funded and administered health insurance program for eligible elderly and disabled persons and certain individuals with end stage renal disease.  42 U.S.C. § 1395c.  The Secretary administers the Medicare program through CMS, a component agency of the United States Department of Health and Human Services.

The Medicare program is divided into four major components.  Part A, the hospital insurance benefit program, provides health insurance coverage for certain inpatient hospital care, post-hospital care in a skilled facility, post-hospital home care services, and other related services. 42 U.S.C. §§ 1395c, 1395d.  Part B, the supplemental medical insurance benefit program, generally

pays for a percentage of certain medical and other health services, including physician services, supplemental to the benefits provided by Part A. 42 U.S.C. §§ 1395j, 1395k, 1395l. Under Part C, the Medicare Advantage program, a Medicare beneficiary can elect to receive his or her Medicare benefits through a public or private healthcare plan. 42 U.S.C. § 1395w-21 *et seq*. Finally, Part D is the voluntary prescription drug benefit program.

Under Part C's Medicare Advantage program, the federal government pays insurers to provide the coverage that participating beneficiaries would otherwise receive through Parts A and B (sometimes known, collectively, as "traditional" Medicare). *Id.* § 1395w-22(a). These insurers, known as Medicare Advantage Organizations, contract to provide coverage in a particular geographic area. Beneficiaries can then choose among the plans available where they reside. *Id.* § 1395w-21(b). Medicare Advantage Organizations receive a predetermined sum for providing coverage to each beneficiary, based in part on the demographic and health characteristics of that beneficiary. *Id.* § 1395w-23(a)(1)(A), (C).

To calculate payments to Medicare Advantage Organizations, CMS first determines its "benchmark," based on the per-capita cost of covering Medicare beneficiaries under Parts A and B in the relevant geographic area. *Id.* § 1395w-23(n); 42 C.F.R. § 422.258. Each Medicare Advantage Organization then submits a "bid," telling CMS what payment the Medicare Advantage Organization will accept to cover a beneficiary with an average risk profile in that area. 42 C.F.R. § 422.254. If the insurer's bid is less than the benchmark, the bid becomes its "base payment"— the amount it is paid for covering a beneficiary of average risk—and the insurer receives a portion of the difference between its bid and the benchmark as a "rebate" that the Medicare Advantage Organization can use to fund supplemental benefits for beneficiaries or reduce plan premiums. 42 U.S.C. § 1395w-24(b)(1)(C); 42 C.F.R. § 422.260. If the Medicare Advantage Organization's bid

is greater than the benchmark, then the benchmark becomes its base payment, and the insurer must charge beneficiaries a premium to make up the difference.  42 U.S.C. §§ 1395w-23(a)(1)(B)(ii), 1395w-24(b)(2)(A).

Star Ratings are a means by which CMS measures the quality of Medicare Advantage plans on a scale of one to five "stars" in half-star increments based on Medicare Advantage data collected by CMS.  42 U.S.C. § 1395w-23(o)(4)(A); *see also* § 1395w-22(e)(3).  Star Ratings reflect the experiences of beneficiaries in these plans and assist beneficiaries in finding the best plans for their needs.  Advance Notice of Methodological Changes for 2026 for Medicare Advantage Capitation Rates & Part C & Part D Payment Policies, at 109 (Jan. 10, 2025), *available at* https://perma.cc/KWB8-VLWK.

CMS has released Star Ratings for Medicare Advantage contracts since 2008.  Contract Year 2019 Policy & Technical Changes to the Medicare Advantage Program, 83 Fed. Reg. 16,440, 16,520 (Apr. 16, 2018).  In 2018, CMS adopted the regulatory framework for the Star Ratings and since then has used rulemaking to adopt changes in the methodology and add new measures.  *Id.*; *see also* 42 C.F.R. §§ 422.164(c),(d), 423.184(c),(d).  The 2018 final rule describes the purpose of the Star Ratings system: it "is designed to provide information to the beneficiary that is a true reflection of the plan's quality and encompasses multiple dimensions of high-quality care."  83 Fed. Reg. at 16,520.

Star Ratings are assigned to each individual contract held by a Medicare Advantage Organization.  The overall Star Ratings are based on a 5-star scale, set in half-star increments, with 1 star being the lowest rating and 5 stars being the highest.  42 U.S.C. §§ 1395w-23(o)(4)(A), 1395w-24(b)(1)(C)(v); 42 C.F.R. §§ 422.162(b); 422.166(h)(1)(ii), 423.182(b), 423.186(h)(1)(ii).  Star Ratings affect payments to Medicare Advantage Organizations in two main ways.  First,

- 4 -

Medicare Advantage plans that earn a rating of four stars or higher qualify for Medicare Advantage Quality Bonus Payments in the form of an increased benchmark for the contract year following the ratings year (*e.g.*, the 2025 Star Ratings can increase the Medicare Advantage bidding benchmarks for contract year 2026). 42 U.S.C. § 1395w-23(o)(1) (increasing, for qualifying plans, the applicable percentage that calculates the benchmark); § 1395w-23(o)(3)(A)(i) (a qualifying plan is one that earns a rating of four stars or higher). This in turn can allow a Medicare Advantage plan to increase its bid, receive higher rebates, or lower premiums. *See id.* § 1395w-24(b)(1)(C); 42 C.F.R. § 422.260.

Second, Star Ratings affect the level of rebate received by plans that bid below their benchmarks for the contract year following the ratings year (e.g., the 2025 Star Ratings are used to set plans' rebate percentages for contract year 2026). Plans that earn a rating of four-and-a-half stars or higher receive a rebate of seventy percent of the difference between their bid and the benchmark, while plans that earn three-and-a-half or four stars receive a rebate of sixty-five percent of that difference, and plans that earn less than three-and-a-half stars are eligible for a rebate of fifty percent of that difference. 42 U.S.C. § 1395w-24(b)(1)(C)(v) (listing the "final applicable rebate percentage[s]" by rating); 42 C.F.R. §§ 422.166(a)(2)(ii), 423.186(a)(2)(ii) (same).

CMS publishes the Star Ratings each October for the upcoming year at the contract level, with each plan offered under that contract assigned the contract's rating. 42 C.F.R. §§ 422.162(b), 422.166, 423.182(b), 423.186. It published the 2025 Star Ratings, for example, in October 2024. CMS, Fact Sheet – 2025 Medicare Advantage and Part D Star Ratings (Oct. 10, 2024) ("Fact Sheet"), *available at* https://perma.cc/8TLH-G7ZL. The 2025 Star Ratings are calculated based mostly on 2023 measurement year data. A.R. 28-105 (indicating "data time frame" for each quality

measure is primarily 2023).  The 2024 Star Ratings are calculated on mostly 2022 measurement year data.  Tech Guidance, 34-111 (indicating "data time frame" for each quality measure is primarily 2022).

To calculate overall Star Ratings, CMS scores Medicare Advantage contracts on approximately 30 to 40 unique quality measures, depending on whether the plan is Medicare Advantage-only or also includes Part D coverage.  A.R. 13.[1]  These measures relate to five broad categories—outcomes, intermediate outcomes, patient experience, access, and process, *see id.* at 9—and CMS uses a variety of data including administrative and medical record review data collected as part of the Healthcare Effectiveness Data and Information Set ("Healthcare Effectiveness Data" or "HEDIS") and survey-based data from the Health Outcomes Survey and from the Consumer Assessment of Healthcare Providers and Systems ("CAHPS").  83 Fed. Reg. at 16,520, 16,525.  These measure-level scores are also expressed in "stars" but are awarded in whole-star increments, not half stars like the overall Star Ratings.  42 C.F.R. §§ 422.166(a)(4), 423.186(a)(4).

### A.    Special Needs Plan Measures

Some quality measures relate specifically to Special Needs Plans.  Special Needs Plans are Medicare Advantage plans designed to provide targeted care to special needs individuals.  A.R. 25.  Special Needs Plans are for those with certain chronic diseases and conditions, who have both Medicare and Medicaid, and for those who live in an institution such as a nursing home.  There are three specific Special Needs Plan measures in the 2025 Star Ratings: C05—Special Needs Plan Care Management; C06: Care for Older Adults—Medication Review; and C07: Care for Older

---

[1]    CMS references its Technical Notes in its operative regulations.  42 C.F.R. §§ 422.164(a) & 423.184(a).

Adults—Pain Assessment.  *Id.*  This case primarily concerns measure C05, entitled Special Needs Plan Care Management.  Unless an exclusion applies, *see* A.R. 37-38, a contract offering Special Needs Plans is evaluated on all three measures, including measure C05.

In the 2025 Technical Guidance, CMS provides more details about each of the specific quality measures, including measure C05.  Measure C05 evaluates the percentage of members whose plan did an assessment of their health needs and risks in the past year.  *Id.* at 37.  Measure C05 is based on data reported by contracts through the Medicare Part C Reporting Requirements.  *Id.*  This is data that CMS has required Medicare Advantage Organizations to report pursuant to its authority under 42 C.F.R. § 422.516(a).  CMS's guidance states that data reported by contracts to CMS per the 2023 Part C Reporting Requirements are validated retrospectively during the 2024 data validation cycle.  *Id.*  "Contracts and [plan benefit packages] with an effective termination date on or before the deadline to submit data validation results to CMS (June 15, 2024) are excluded and listed as 'No data available.'"  *Id.*  If a Special Needs Plan benefit package under a contract terminates "at any time in the [contract year] reporting period and the contract remains active through July 1 of the following year, the contract must still report data for all [plan benefit packages], including the terminated [plan benefit packages]."  *Id.* at 119.

## B.    Star Ratings Calculation Methodology

CMS calculates summary and overall ratings[2] using the 40 unique quality measures.  The overall rating for a contract is calculated using the average of the Part C Star Ratings.  42 C.F.R.

---

[2]    This brief will use the phrase "overall ratings" to refer to both summary and overall ratings. Technically, they are different ratings.  The Part C and Part D summary ratings are calculated by taking a weighted average of the measure stars for Parts C and D, respectively.  A.R. 20.  For Medicare Advantage Prescription Drug plans to receive an overall rating, the contract must have stars assigned to both the Part C and Part D summary ratings.  Plans that do not only receive a summary rating.

§§ 422.166(d)(1), 423.186(d)(1); A.R. 20.  The average is weighted based on measure type because not all measures are equally weighted.  CMS assigns the highest weight to the improvement measures, followed by patient experience, complaints and access measures, then outcome and intermediate outcome measures, and finally process measures.  42 C.F.R. §§ 422.166(e), 423.186(e); A.R. 20.  New measures are weighted the same as process measures for the first year in the Star Ratings.  42 C.F.R. §§ 422.166(e)(2), 423.186(e)(2); A.R. 20.  CMS includes the Star Ratings measures in the overall ratings that are associated with the contract type for the Star Ratings year.  42 C.F.R. §§ 422.162(b)(1), 423.182(b)(1).  This means that if, for example, a plan offered Special Needs Plan Care Management in the 2023 measurement year but is no longer offering Special Needs Plan Care Management in 2025, the Special Needs Plan-related quality measures would be excluded in the calculation of the 2025 Star Ratings for that plan.  A.R. 13. Overall ratings are calculated "with at least six digits of precision after the decimal whenever the data allow it."  *Id.* at 22.

### C.    Star Ratings Following Consolidation

CMS's regulations governing the calculation of Star Ratings address consolidations. Consolidation means "when a [Medicare Advantage] organization that has at least two contracts for health and/or drug services of the same plan type under the same parent organization in a year combines multiple contracts into a single contract for the start of the subsequent contract year." 42 C.F.R. §§ 422.162(a), 423.182(a).  The consumed contract "means a contract that will no longer exist after a contract year's end as a result of a consolidation."  *Id.*  The surviving contract "means the contract that will still exist under a consolidation, and all of the beneficiaries enrolled in the consumed contract(s) are moved to the surviving contracts."  *Id.*

When two plans consolidate, CMS assigns Star Ratings for the first and second years following the consolidation "based on the enrollment-weighted mean of the measure scores of the

surviving and consumed contracts." *Id.* §§ 422.162(b)(3), 423.182(b)(3); A.R. 25. For the first year and second years after the consolidation, "CMS uses enrollment-weighted measure scores using the July enrollment of the measurement period of the consumed and final contracts for all measures," with certain exceptions not relevant here. 42 C.F.R. §§ 422.162(b)(3)(iv)(A)(1), (B)(1), 423.182(b)(3)(iv)(A)(1), (B)(1). Because Star Ratings following a consolidation are based on "the enrollment-weighted mean of the measure scores of the surviving and consumed contract(s)," *id.* §§ 422.162(b)(3)(i), 423.182(b)(3)(i), if a contract was not evaluated on a particular quality measurement for a measurement year, there would be no score for that measure and it would not factor into the mean for that measure score Star Rating.

## II.    Factual And Procedural Background

On January 1, 2024, HMOLA's parent company, BCBSLA, consolidated two of its contracts—H6453 and H5576. Pl. Mem. (ECF No. 17-1) at 6. H6453 is the surviving contract; H5576 is the consumed contract. *Id.* For the 2024 Star Ratings year—the first year of consolidation—CMS combined the data from contracts H6453 and H5576. Ex. 1 (Goldstein Decl.) ¶ 2. That data was from 2022. In 2022, only contract H5576 offered a Special Needs Plan benefit package. Per CMS's regulation, CMS took the "weighted mean of the measure scores of the surviving and consumed contracts," not counting in the mean any contracts that did not have scores for a particular measure. 42 C.F.R. §§ 422.162(b)(3), 423.182(b)(3). CMS calculated the mean of contracts H6453 and H5576's surviving contracts' C05 measure scores to be contract H5576's C05 score, and this resulted in a rating of 4 stars on the measure. Ex. 1 (Goldstein Decl.) ¶ 2.

On September 12, 2024, HMOLA requested that CMS include data from both contract H5576 and H6453 in calculating measure C05, citing § 422.162(b)(3)(ii). A.R. 317-19. CMS received from HMOLA contract H5576's Special Needs Plan data on October 24, 2024, and its data validation findings on October 30, 2024. A.R. 316. For the 2025 Star Ratings year—the

second year of consolidation—CMS combined this validated data from contracts H6453 and H5576. A.R. 315-16. That data was from 2023. In 2023, only contract H5576 offered a Special Needs Plan benefit package. Per CMS's regulation, CMS calculated the weighted mean of contracts H6453 and H5576's surviving contracts' C05 measure scores to be contract H5576's C05 score, and this resulted in a rating of 3 stars on the measure. Following their formula for calculating an overall Star Ratings score, CMS combined HMOLA's C05 score with the other applicable quality measures and calculated a final overall score of 3.603658. Ex. 1 (Goldstein Decl.) ¶ 3.

Plaintiff HMOLA filed its Amended Complaint on December 10, 2024. Pl. Am. Compl. (ECF No. 12). HMOLA argues that by including measure C05 to calculate HMOLA's 2025 Star Rating, CMS violates its own regulations. Pl. Mem. (ECF No. 17-1) at 9.

## STANDARD OF REVIEW

In this action proceeding under the Medicare statute, judicial review is governed by the standards of the Administrative Procedure Act ("APA"), 5 U.S.C. § 706, and decided on an administrative record. *Se. Ala. Med. Ctr. v. Sebelius*, 572 F.3d 912, 916-17 (D.C. Cir. 2009). Accordingly, "'the district court does not perform its normal role' but instead 'sits as an appellate tribunal'" resolving legal questions. *County of Los Angeles v. Shalala*, 192 F.3d 1005, 1011 (D.C. Cir. 1999) (quoting *PPG Indus., Inc. v. United States*, 52 F.3d 363, 365 (D.C. Cir. 1995)). Although the parties move for summary judgment, the "standard set forth in Rule 56(c) . . . does not apply." *Gentiva Healthcare Corp. v. Sebelius*, 857 F. Supp. 2d 1, 6 (D.D.C. 2012), *aff'd*, 723 F.3d 292 (D.C. Cir. 2013). Rather, summary judgment "serves as the mechanism for deciding, as a matter of law, whether the agency action is supported by the administrative record and otherwise consistent with the APA standard of review." *Id*.

The APA provides for courts to "hold unlawful and set aside agency action, findings, and conclusions" if they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A), or "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right," *id.* § 706(2)(C).  Under the APA's "arbitrary or capricious" standard, the Court "must consider whether the [agency's] decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment."  *Marsh v. Or. Nat. Res. Council*, 490 U.S. 360, 378 (1989).  An agency is required to "examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made."  *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (internal quotation marks omitted).  Even a decision that is not fully explained may be upheld "if the agency's path may reasonably be discerned."  *Bowman Transp., Inc. v. Ark.-Best Freight Sys., Inc.*, 419 U.S. 281, 286 (1974).

The "arbitrary or capricious" standard is "narrow . . . as courts defer to the agency's expertise."  *Ctr. for Food Safety v. Salazar*, 898 F. Supp. 2d 130, 138 (D.D.C. 2012) (quoting *Motor Vehicle*, 463 U.S. at 43).  The Court "is not to substitute its judgment for that of the agency." *Id*.  In Medicare cases, the "'tremendous complexity of the Medicare statute" "adds to the deference which is due to the Secretary's decision.'"  *Dist. Hosp. Partners, L.P. v. Burwell*, 786 F.3d 46, 60 (D.C. Cir. 2015) (quoting *Methodist Hosp. of Sacramento v. Shalala*, 38 F.3d 1225, 1229 (D.C. Cir. 1994)).  The question is not whether the agency's policy is the "best" or only solution, but whether it is a "reasonable solution."  *Petal Gas Storage, L.L.C., v. FERC*, 496 F.3d 695, 703 (D.C. Cir. 2007).

**ARGUMENT**

On January 1, 2024, BCBSLA consolidated two of its contracts, one that offered Special Needs Plans in 2023 and one that did not. The contract that did not offer a Special Needs Plan became the surviving contract. After the consolidation, the surviving, consolidated contract offered Special Needs Plans in 2024 and offers Special Needs Plans today for Star Ratings year 2025. Under the applicable regulations, because the consumed contract offered Special Needs Plans in 2023 and the surviving, consolidated contract offered Special Needs Plan coverage in 2025, CMS properly evaluated HMOLA's surviving, consolidated contract on the C05 quality measure.

## I.  CMS Calculated HMOLA's Consolidated Contract Score by Following Its Regulations

In the event of a consolidation, CMS's regulations require that if a quality measure is applicable to either the consumed or the surviving contract during the relevant measurement year and those applicable quality measures are associated with the surviving, consolidated contract's type for the Star Ratings year, that measure will count towards the surviving, consolidated contract's overall score. *See* 42 C.F.R. §§ 422.162(b)(1), (b)(3). Consistent with this directive, in determining whether measure C05 should apply to a consolidated contract's overall Star Ratings, CMS asks whether either the consumed or surviving contract should be evaluated on measure C05 during the measurement year because they offered a Special Needs Plan. *Id.* § 422.166(d) (overall rating "will be calculated using a weighted mean of the Part C and Part D measure-level Star Ratings"). If the answer is no, CMS does not include measure C05 in a contract's overall score. *Id.* If the answer is yes, CMS proceeds to step two. CMS next asks whether the surviving, consolidated contract is offering any Special Needs Plans during its Star Ratings year. *Id.* § 422.162(b)(1) ("CMS includes the Star Ratings measures in the overall and summary ratings that

are associated with the contract type for the Star Ratings year."). If not, CMS does not count measure C05 towards that contract's overall rating. *Id.* If it does, CMS must include measure C05 in the consolidated contract's overall rating. *Id.* CMS's regulations require it to then calculate the enrollment-weighted mean of the measure scores of the surviving and consumed contracts. *Id.* § 422.162(b)(3).

CMS followed these steps and determined that HMOLA's consolidated contract H6453 should be evaluated on measure C05 and assigned a Star Rating of 3.0. A.R. 316. CMS first determined that HMOLA's consumed contract, H5576, offered Special Needs Plans in 2023, for which it received a score of 70 percent. *Id*. HMOLA's surviving contract, H6453, did not receive a score because it did not offer such a plan in 2023. *Id.* HMOLA's surviving, consolidated contract is offering Special Needs Plans in 2025. As a result, CMS scored contract H6453 on measure C05. *See* 42 C.F.R. § 422.162(b)(1). To find the score to be assigned to the consolidated contract, under CMS regulations, CMS assigns Star Ratings for the first and second years following the consolidation "based on the enrollment-weighted mean of the measure scores of the surviving and consumed contracts." *Id.* § 422.162(b)(3). There is not a requirement that both plans need to have qualified for a specific quality measure. Under the regulation, therefore, because the surviving contract had no C05 score, the enrollment-weighted mean of the measure scores of the surviving (null) and consumed contracts equaled 70 percent for C05 for the consolidated contract. Consequently, the score of 70 percent translated into 3 stars for the surviving contract.

HMOLA asserts that "CMS plainly violated its own regulations." Pl. Mem. (ECF No. 17-1) at 9. Not so. As explained, CMS followed its regulations pertaining to consolidations. HMOLA argues that because contract H6453 (the surviving, consolidated contract) was not the contract to offer Special Needs Plans in the 2023 measurement year, it should not be evaluated on measure

C05: "CMS should have treated measure C05 as a 'no score.'" *Id.* The regulations do not support HMOLA's argument. CMS's regulations simply do not require the surviving contract to be the contract that offered Special Needs Plans in the 2023 measurement year to be used to determine the rating for the surviving, consolidated contract in 2025. It is sufficient that the consumed contract, H5576, offered a Special Needs Plan in the 2023 measurement year. *See* 42 C.F.R. § 422.162(b)(3).

HMOLA argues, quoting from CMS's 2025 Technical Guidance, that CMS's regulations require it to "exclude from its calculation '[c]ontracts and [plan benefit packages] with an effective termination date on or before . . . June 15, 2024.'" Pl. Mem. (ECF No. 17-1) at 9. HMOLA contends that its "subsumed contract effectively terminated at its merger on January 1, 2024" and that, consequently, its contract should be excluded from evaluation on the C05 cost measure. *Id.* The full sentence from the Technical Guidance provides, however: "Contracts and [plan benefit packages] with an effective termination date on or before the deadline to submit data validation results to CMS (June 15, 2024) are excluded and listed as '*No data available.*'" A.R. 37 (emphasis added). This sentence provides an exclusion for contracts whose termination prevents it from submitting data validation results of the 2023 measurement year data. *Id.* That is not the situation with HMOLA's surviving, consolidated contract. HMOLA's alleged contract termination did not prevent it from submitting data. It submitted Special Needs Plan data for contract H5576's to CMS on October 24, 2024, and the data validation findings on October 30, 2024. A.R. 315-16. Here, the consumed contract's 2023 data were able to be validated, and so exclusion of data on the basis that there is "no data available" makes no sense.

Contract H5576 (the consumed contract) was combined into a single, active contract, contract H6453, under the regulations. *See* 42 C.F.R. § 422.162(a) ("Consolidation means when

an [Medicare Advantage] organization that has at least two contracts for health and/or drug services of the same plan type under the same parent organization in a year combines multiple contracts into a single contract for the start of the subsequent contract year."). CMS's regulations are clear that following a consolidation, the acquired contract becomes a "consumed contract." *Id.* Under a consolidated contract, the consumed contract's measure scores do not simply disappear. Instead, "CMS assigns Star Ratings for the first and second years following the consolidation based on the enrollment-weighted mean of the measure scores of the surviving and consumed contract(s)." *Id.* § 422.162(b)(3)(i). Whether HMOLA regards its contract H5576 terminated or not, a consumed contract's enrollment and quality measures during its two measurement years preceding a consolidation, therefore, are relevant for purposes of determining a consolidated entity's overall Star Ratings. *See id.* § 422.162(b)(3)(iv)(A)(1), (b)(1); *see also* A.R. 28-105.

## II.    CMS's Calculation of HMOLA's Consolidated Contract Score Is Consistent with the Statute

HMOLA argues that in evaluating contract H6453 (the surviving contract) on measure C05, CMS acted inconsistently with its statutory mandate. Pl. Mem. (ECF No. 17-1) at 10. But HMOLA fails to cite to any specific statutory language. Instead, HMOLA quotes from "guiding principles" set out in CMS's 2018 final rulemaking pertaining to, among other things, Star Ratings. *Id.* These guiding principles are: providing beneficiaries with a "true reflection of plan quality and enrollee experience," providing "information about plan quality and performance indicators," and helping beneficiaries "make informed plan choices." 83 Fed. Reg. at 16,520-21. CMS must issue Star Ratings that "treat contracts fairly and equally" while "minimizing unintended consequences." *Id.* at 16,521.

HMOLA contends that CMS has acted inconsistently with these principles by "issuing Star Ratings that do not accurately reflect HMOLA's plan." Pl. Mem. (ECF No. 17-1) at 10-11. But

CMS's 2025 Star Ratings for contract H6453 do accurately and fairly reflect HMOLA's plan.  As noted above, CMS averages the measure scores of the surviving and consumed contracts, weight-adjusted for enrollment.  42 C.F.R. § 422.162(b)(3).  HMOLA is proposing a scheme whereby CMS evaluates its consolidated contract on measure C05 during the 2023 performance period only on the basis of the performance of contract H6453 and not on the performance of its consumed contract, H5576.  But for CMS not to include measure C05 in the H6453's overall score would constitute a failure to account for a major contributor in its 2025 overall score for the 2023 measurement year.  For the 2024 Star Ratings year, CMS included measure C05 from the consumed contract and, presumably satisfied with its overall rating, HMOLA did not object. HMOLA now argues that "[b]y issuing 2025 Star Ratings that relied on ratings for plans HMOLA did not *even offer* during the measuring period, the agency issued Star Ratings that do not represent a 'true reflection' of HMOLA's services and care."  Pl. Mem. (ECF No. 17-1) at 11 (emphasis in original).  But HMOLA did offer Special Needs Plans for measurement year 2023 through its consumed contract, H5576.  HMOLA's surviving, consolidated contract, H6453 is still offering Special Needs Plans that were originally offered under consumed contract H5576.  Accounting for HMOLA's consumed contract provides beneficiaries with a truer reflection of plan quality and enrollee experience for the 2023 measurement period than excluding it from measure C05.  This is why CMS regulations take into account data from the consumed contract for two years after consolidation, after which time the data are from measurement years that reflect the surviving contract after consolidation.

While HMOLA did not object to the inclusion of the consumed contract's measure score resulting in a rating of 4 stars for the 2024 Star Ratings, HMOLA now takes issue with the inclusion of that same measure score for Star Ratings year 2025 because its C05 measure rating

- 16 -

went down to 3 stars. It would prefer that CMS not count measure C05 for 2025, arguing essentially that surviving contracts should never be evaluated for plans only offered by consumed contracts during the measurement year. *See* Pl. Mem. (ECF No. 17-1) at 11 ("By issuing 2025 Star Ratings that relied on ratings for plans HMOLA did not *even offer* during the measuring period, the agency issued Star Ratings that do not represent a 'true reflection' of HMOLA's services and care."). But this is not what the regulations provide. Under HMOLA's logic, CMS should also exclude the two other Special Needs Plan-specific measures—C06: Care for Older Adults–Medication Review and C07: Care for Older Adults–Pain Assessment—from the consumed contract. But HMOLA's overall ratings score would slightly decrease compared to the published 2025 Star Ratings if CMS did this because for both measures H6453 was rated 5 stars, so HMOLA chose to cherry-pick C05 for exclusion. Ex. 1 (Goldstein Decl.) ¶ 4. HMOLA cannot have it both ways.

### III.    HMOLA Is Not Entitled to Relief

HMOLA argues that it "is likely to succeed on the merits of its APA and declaratory judgment claims" and requests that this Court enter injunctive relief. Pl. Mem. (ECF No. 17-1) at 13. HMOLA conflates the standard for a preliminary injunction and permanent injunction. "Unlike a preliminary injunction, actual success on the merits is required to obtain permanent injunctive relief." *Smirnov v. Clinton*, 806 F.Supp.2d 1, 13 (D.D.C. 2011). For the reasons stated above, HMOLA has failed to demonstrate actual success on the merits, and accordingly is not entitled the requested relief.

\*        \*        \*

**CONCLUSION**

For these reasons, the Court should grant Defendants' cross-motion for summary judgment and deny Plaintiff's motion for summary judgment.

Dated: March 21, 2025                Respectfully submitted,

                                     EDWARD R. MARTIN, JR., D.C. Bar #481866
                                     United States Attorney

                                     By:    _/s/ M. Jared Littman_____
                                            M. JARED LITTMAN
                                            Assistant United States Attorney
                                            601 D Street, NW
                                            Washington, DC 20530
                                            (202) 252-2523

                                     *Attorneys for the United States of America*

OF COUNSEL:

SEAN R. KEVENEY
    Acting General Counsel

ELIZABETH C. KELLEY
    Acting Associate General Counsel

LENA YUEH
    Acting Associate General Counsel

DAVID L. HOSKINS
    Deputy Associate General Counsel for Litigation

KIRSTEN FRIEDEL RODDY
KENNETH WHITLEY
    Attorneys

*U.S. Department of Health and Human Services*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---

HMO LOUISIANA, INC.,

                 *Plaintiff,*

       v.

DEPARTMENT OF HEALTH AND
HUMAN SERVICES, et al.,

                 *Defendants*.

Civil Action No. 24-2931 (CRC)

---

**[PROPOSED] ORDER**

UPON CONSIDERATION of Defendants' Cross-Motion for Summary Judgment and in Opposition to Plaintiff's Motion for Summary Judgment, and the entire record herein, it is hereby

ORDERED that Defendants' cross-motion is GRANTED, and it is further

ORDERED that Plaintiffs' motion is DENIED.


SO ORDERED:


_____
Date

_____
CHRISTOPHER R. COOPER
United States District Judge