```
 1                  IN THE UNITED STATES DISTRICT COURT
                       FOR THE DISTRICT OF COLUMBIA
 2      - - - - - - - - - - - - - - - x
        HMO LOUISIANA, INC.,
 3                                        CA No:  1:24-cv-02931-CRC
                        Plaintiff,
 4                                        Washington, D.C.
                                          Wednesday, July 2, 2025
 5      v.                                3:08 p.m.

 6      DEPARTMENT OF HEALTH AND HUMAN
        SERVICES, et al.,
 7
                        Defendants.
 8      - - - - - - - - - - - - - - - x

 9      _____

10                     TRANSCRIPT OF MOTION HEARING
             HELD BEFORE THE HONORABLE CHRISTOPHER R. COOPER
11                     UNITED STATES DISTRICT JUDGE
        _____
12      APPEARANCES:
        For the Plaintiff:       HANNAH J. WIGGER, ESQ.
13                               IMAD SAYED MATINI, ESQ.
                                 TIFENN VIRGINIE DROUAUD, ESQ.
14                               PAUL ANTHONY WERNER, III, ESQ.
                                 SHEPPARD MULLIN RICHTER & HAMPTON LLP
15                               2099 Pennsylvania Avenue, NW
                                 Washington, DC 20006
16                               (202) 747-2673

17      For the Defendants:      JOHN BARDO, ESQ.
                                 DOJ-USAO
18                               601 D Street NW
                                 Washington, DC 20530
19                               (202) 870-6770

20                               KENNETH RYAN WHITLEY, ESQ.
                                 DEPARTMENT OF HEALTH AND HUMAN
21                               SERVICES
                                 330 Independence Avenue, SW
22                               Washington, DC 20201
                                 (609) 458-1733

23      Court Reporter:          Lisa A. Moreira, RDR, CRR
                                 Official Court Reporter
24                               U.S. Courthouse, Room 6718
                                 333 Constitution Avenue, NW
25                               Washington, DC  20001
                                 (202) 354-3187
```

```
 1                    P R O C E E D I N G S
 2              THE COURTROOM DEPUTY:  Good afternoon.  We're here
 3     today for a motion hearing in Civil Action 24-2931, HMO
 4     Louisiana, Inc. v. The Department of Health and Human
 5     Services, et al.
 6              Beginning with counsel for the plaintiff, if you
 7     would approach the lectern and identify yourself for the
 8     record.
 9              MS. WIGGER:  Thank you.  Good afternoon, Your
10     Honor; my name is Hannah Wigger, and I represent HMO
11     Louisiana in this matter.  I'm joined by my co-counsel, Paul
12     Werner, Tifenn Drouaud, and Imad Matini.
13              THE COURT:  Okay.  Did you guys get an earful
14     before?
15              MS. WIGGER:  Not yet.
16              THE COURT:  At the hearing before?
17              MR. MATINI:  We did not.
18              THE COURT:  I was going to say welcome to my
19     world, but...
20              MR. BARDO:  Good afternoon, Your Honor; John Bardo
21     on behalf of the government.  I'm joined at counsel table by
22     Ken Whitley and Kristin Roddy.  Mr. Whitley is a Special
23     Assistant U.S. Attorney so he's going to be taking the lead
24     on the argument.
25              THE COURT:  Very well.  Welcome, everybody.
```

```
 1                    MR. BARDO:  Thank you, Your Honor.

 2                    THE COURT:  All right.  Ms. Wigger, it's your

 3       challenge so why don't we start with you.

 4                    MS. WIGGER:  Thank you, Your Honor.

 5                    THE COURT:  All right.

 6                    MS. WIGGER:  Your Honor, we are here today because

 7       CMS issued a Star Rating for services not actually offered

 8       in violation of its own regulations and the APA.  That error

 9       has cost HMO Louisiana tens of millions of dollars in

10       Quality Bonus Payments that it needs to provide supplemental

11       services to its members, including things like reduced cost

12       sharing, vision services, dental, hearing aids, that kind of

13       stuff.

14                    HMO Louisiana is entitled to summary judgment on

15       its APA and declaratory judgment claims because CMS's

16       actions violate the plain text of its regulations and

17       undermine the basic statutory objective to provide Star

18       Ratings that are a true reflection of the plan's quality.

19       And I would like to take each of those in turn.

20                    First, CMS's calculation of HMO Louisiana's --

21                    THE COURT REPORTER:  I'm going to ask you to slow

22       down because I see that you're reading.

23                    MS. WIGGER:  Sorry.  It's a problem I have so feel

24       free to interrupt me.

25                    THE COURT:  We've got plenty of time.
```

1          MS. WIGGER:  CMS's calculations of HMO Louisiana's

2     2025 Star Rating is contrary to its own regulations.  HMO

3     Louisiana contracts with CMS to provide an alternative to

4     traditional government managed Medicare.

5          THE COURT:  Okay.  So contrary to -- the

6     regulation that you're saying it's contrary to is 42 CFR

7     422.161(b)(3)?

8          MS. WIGGER:  Correct, and technical notes that are

9     incorporated as well --

10          THE COURT:  Let's start with the main regulation.

11          MS. WIGGER:  Yes, Your Honor.

12          THE COURT:  All right.  And didn't HMOLA take the

13     position in the negotiation process that that regulation, in

14     fact, required consideration of measure CO2 or CO5?

15          MS. WIGGER:  Yes, sir.

16          THE COURT:  And why weren't you right then as

17     opposed to being right now?

18          MS. WIGGER:  Yes, Your Honor.  When this dispute

19     started between the parties, there were several measures

20     that were at issue between the parties.

21          THE COURT:  Right.

22          MS. WIGGER:  And HMO Louisiana was trying to work

23     with CMS to come to a global resolution of this case in the

24     context of settlement discussions and to understand how CMS

25     actually treated several of these measures.  In that

1    context, they did ask CMS to collect data for different

2    measures, but the issue here is how CMS actually applied

3    that data to the one measure that's at issue here.

4              THE COURT:  Okay.  Let's just pause.  So that

5    regulation says that for the first two years after

6    consolidation CMS calculates the Star Rating based on

7    enrollment weighted averages of the scores of the

8    consolidated contracts.  Enrollment is calculated as of

9    July.

10             Why doesn't that directly cover the situation with

11   respect to Measure CO5?

12             MS. WIGGER:  Because that is a general provision

13   that is made more specific in the technical notes that are

14   also incorporated by the -- in the Federal Code that

15   directly relate to the way that data is applied to Measure

16   CO5.

17             THE COURT:  Okay.  And so the technical note is at

18   Page 37 of the AR.

19             MS. WIGGER:  It begins there, Your Honor, yes, and

20   I can point you to specific provisions at issue here.

21             THE COURT:  Hold on.

22             MS. WIGGER:  So for Measure CO5, that begins on

23   JA45.  I believe that's the same AR number for the earlier

24   numbers.

25             THE COURT:  Okay.

1           MS. WIGGER:  So JA45 speaks to how data is applied

2      to Measure CO5.  And, again, this is incorporated into the

3      operative regulations at 42 CFR 422.164(a).

4           So under its regulations at AR45, CMS is required

5      to exclude from its calculation of Measure CO5 contracts

6      with an effective termination date on or before June 15,

7      2024.

8           Attachment E to these technical notes, which is at

9      JA127, reiterates that same calculation.  So at JA127, CMS

10     sets forth a two-step process; not the two-step process that

11     they reference in their opposition brief, but the two-step

12     process in their regulation for how they calculate Measure

13     CO5.

14          That two-step process under Step 1, they start

15     with all contracts that offer at lease one SNP plan.  Now,

16     here that's only the consumed contract.  The surviving

17     contract never offered an SNP plan so it was never evaluated

18     for it.

19          Step 2 at JA127 is to, quote, exclude any

20     contracts with an effective termination date on or before

21     the deadline to submit data validation results to CMS, which

22     is, again, June 15th of 2024.

23          THE COURT:  But you took the position in your

24     October 14, '24, letter objecting to CMS's exclusion of

25     Measure CO5 data that Contract 5576 was not terminated

1   because it was consumed after the consolidation with

2   Contract 6453.

3          You're now taking the opposite position.  You

4   convinced CMS to adopt your position.  They did.  Now you're

5   complaining about it.

6          MS. WIGGER:  Your Honor, again, at the beginning

7   of this case HMO Louisiana was trying to understand what CMS

8   had done and how they could resolve it.

9          THE COURT:  Well, you were doing more than trying

10  to understand it.  You were urging them to accept your

11  position, which they did.  And you objected to their

12  interpretation of the technical note to prohibit inclusion

13  of data from terminated contracts.

14         MS. WIGGER:  That's true.  HMO Louisiana did do

15  that.  However, looking at these regulations --

16         THE COURT:  Now, you can tell me you're entitled

17  to change your position.  They're not.  That's what I

18  expected to hear.  But you can't say that wasn't your

19  position because you were just trying to understand the

20  issues.  Right?

21         MS. WIGGER:  It's what was in the letter that is

22  in the record from HMO Louisiana at the beginning of this

23  case.

24         THE COURT:  Okay.

25         MS. WIGGER:  But the issue is that what CMS

1    actually did still has to comply with the APA.  And when you

2    look at the APA --

3              THE COURT:  And why doesn't it comply with

4    regulation?

5              MS. WIGGER:  Because the regulation says that data

6    from contracts with an effective termination date on or

7    before June of 2024 has to be excluded.  This contract --

8              THE COURT:  That's the technical note.

9              MS. WIGGER:  Correct.

10             THE COURT:  Why don't we get there.

11             First of all, is it binding, or is it not binding?

12   Is it agency guidance that's not binding, or is it something

13   the agency has to adhere to?

14             MS. WIGGER:  No, it's binding.  It's been

15   incorporated into the regulations.

16             THE COURT:  Okay.  And if it weren't incorporated

17   into the regulations, would it still be binding?

18             MS. WIGGER:  Yes, it's still binding on the

19   agency.  The agency --

20             THE COURT:  What authority -- what's your best

21   authority for that proposition?

22             MS. WIGGER:  The APA.  Because when the agency

23   sets out regulations and says, "This is how I'm going to

24   calculate" --

25             THE COURT:  Well, wait, wait, wait.  We've got

1    regulations, notice and comment, et cetera, right?

2              We have informal agency internal guidance via a

3    technical note, right?

4              Let's say that they're not incorporated into the

5    regulations.  Are they binding?

6              MS. WIGGER:  Yes.

7              THE COURT:  What authority do you have for that?

8              MS. WIGGER:  The APA.  Because under the decisions

9    that interpret the APA, the agency cannot act arbitrary and

10   capriciously, and part of that is that it can't treat

11   parties differently.  So if it says this is how I'm going to

12   calculate data and validate it in order to determine the

13   substantial benefits, these tens of millions of dollars I'm

14   going to hand out under the Star Rating program, it has to

15   do the same for every program.

16             THE COURT:  So if an agency deviates from

17   nonbinding agency guidance, that's nevertheless arbitrary

18   and capricious under the APA in all cases.

19             MS. WIGGER:  It is in this case.

20             THE COURT:  Is that your position?

21             MS. WIGGER:  It would be in this case at least.

22   I'm not going to say in all cases, but it would at least be

23   in this case because they would not be treating programs the

24   same way.  They would be arbitrarily treating this

25   programming differently.

1            THE COURT:  Okay.  So as I understand it, your

2      position or HMOLA's positions in the negotiations was that

3      that technical note really did not apply because this

4      contract had not been terminated.

5            So having accepted that position, isn't it fair to

6      say that the agency changed its position because it agreed

7      that that technical note doesn't apply to situations where

8      there's a consolidation of a contract.

9            MS. WIGGER:  I don't know why the agency changed

10     its position, but --

11            THE COURT:  Okay.

12            MS. WIGGER:  -- I would like to say something on

13     the termination piece of this.

14            THE COURT:  Okay.

15            MS. WIGGER:  There doesn't seem to be any real

16     dispute that this contract has actually terminated, the

17     subsumed contract.

18            The agency's regulations do not define

19     "termination" as a distinct concept from consolidation, but

20     they do define "consumed contract," and that's at 42 CFR

21     422.162(a).  And in that definition, they defined a consumed

22     contract as one that will no longer exist after a contract

23     year's end as a result of consolidation.  That has to mean

24     terminated.  If it doesn't exist anymore, that has to mean

25     that it terminated it.

1          And, again, that is how the agency itself referred

2    to this contract.  They referred to it as a terminated

3    contract at JA217 in that same correspondence.

4          THE COURT:  Okay.  So let's assume you're correct.

5    Let's assume that the subsumed contract was terminated.

6    Then isn't that flatly inconsistent with the agency's

7    obligation to, you know, take data from both contracts in

8    assessing the quality of a consolidated contract for the

9    first two years?

10         MS. WIGGER:  No, I don't read it that way, and

11   here's why.  When you look at the technical notes for each

12   of these measures, it lists specific exclusion.  There's a

13   general rule that you would consider all the data and then

14   there's a specific way in the technical notes that the

15   agency is to look at each of these measures.

16         When you look at each of the measures, there's

17   specific exclusions to each measure.

18         THE COURT:  Okay.

19         MS. WIGGER:  The exclusion for CO5 happens to have

20   that date as June 15th.  The exclusion for other measures

21   doesn't, and some of them aren't even date related.

22         THE COURT:  Okay.

23         MS. WIGGER:  And so there may be a general

24   directive that they would consider data, but the way that

25   they do that is more specifically defined and they have more

1    specific controls.

2             THE COURT:  Okay.  So the agency, through notice

3    and comment, decided that we're going to consider both

4    contracts or, you know, the consumed and the surviving

5    contracts' data for some measurements, but just not for CO5.

6    That's your --

7             MS. WIGGER:  I think it's a little bit more

8    nuanced than that.  So it's not that we're going to consider

9    some data from some and not others.  It's just that they

10   have different cutoffs or exclusions for different measures.

11            THE COURT:  Okay.

12            MS. WIGGER:  Some are dates -- tied to dates.

13   Some are tied to when different visits took place.

14            THE COURT:  Okay.

15            MS. WIGGER:  But, Your Honor, I think that CO5 is

16   also a unique measure, because CO5, unlike some of the other

17   measures, including the other one that was at issue between

18   the parties, relates to the presence of a specific program

19   as opposed to something like a quality measure that both

20   contracts would have.  And so in this case the problem is

21   that you have the surviving contract that actually should be

22   being evaluated because that's what people will be signing

23   up for --

24            THE COURT:  Okay.  Let's stop there.

25            MS. WIGGER:  Yes.

1           THE COURT:  I want to -- so let's go to 30,000

2      feet.

3           MS. WIGGER:  Okay.

4           THE COURT:  When two contracts combine --

5           MS. WIGGER:  Yes.

6           THE COURT:  -- and one contract offered a special

7      needs plan, that contract is subsumed within a surviving

8      plan.  The surviving plan continues to offer a special needs

9      plan or the surviving contract continues to offer a special

10     needs plan.

11          In effect, isn't that just a continuation of the

12     same plan?  It has the same enrollees, correct?

13          MS. WIGGER:  It would likely have --

14          THE COURT:  Many would overlap with the same

15     enrollees, the same plan administrators, the same nursing

16     homes where people are getting care.  Correct?

17          MS. WIGGER:  Potentially.

18          THE COURT:  Okay.

19          MS. WIGGER:  I think that there would be a

20     different pool when you put the contracts together,

21     potentially different management, different policies.

22          THE COURT:  Okay.

23          MS. WIGGER:  I don't think it's fair to say that

24     the plan that existed in the subsumed contract exists

25     exactly how it did in the surviving contract.

```
1              THE COURT:  It may not be exact, but it certainly

2      shares some attributes of the consumed plan that used to

3      offer special need plans.  Is that fair?

4              MS. WIGGER:  It could.

5              THE COURT:  Okay.

6              MS. WIGGER:  Or there could be a reason that they

7      combined contracts and that they believe that the contract

8      that is going to survive is stronger.

9              THE COURT:  Okay.  But there is some overlap, some

10     continuation of services, doctors, facilities, contract

11     administration.  You know, if I'm signing up for, you know,

12     that surviving plan and I -- or surviving contract and I

13     need special needs services, shouldn't consumers be able to

14     consult a Star Rating, or wouldn't it be helpful to have a

15     Star Rating for that plan that considers those special needs

16     services that are continuing even though the surviving or

17     the consumed plan has been discontinued?

18             MS. WIGGER:  There's nothing in the record that

19     shows that those special needs services are the same or

20     unchanged in the surviving contract.  So that Star Rating is

21     not a fair reflection of the actual quality of the surviving

22     contract.

23             THE COURT:  Okay.  Well --

24             MS. WIGGER:  The Star Rating of the overall

25     program I think is more instructive, and the problem here is
```

1    that the Star Rating of the overall program took a massive

2    hit because of an SNP program that it didn't control at all,

3    and that is fundamentally unfair.

4         THE COURT:  Okay.  There was one thing from the

5    record that I want you to -- that I had difficulty

6    understanding.  Just hold on.  Bear with me.

7         (Pause)

8         THE COURT:  Okay.  In the September 12, '24, email

9    from Mr. Miller to CMS, which is at AR317 to '19, at AR319

10   Mr. Miller writes, "Despite its relevance to the Star Rating

11   calculation for the surviving contract, HMOLA was unable to

12   submit data for two measures for Contract H5576 due to a

13   technical issue with HPMS."

14        What is the technical issue with HPMS?  Was this a

15   computer issue or an issue on CMS's side?  Why did he refer

16   to it as a technical issue?

17        MS. WIGGER:  My understanding is it was an issue

18   on CMS's side such that they literally could not upload

19   data, which, again, we think is consistent with the

20   technical notes.

21        THE COURT:  Okay.  And so if CMS makes a

22   determination that a particular piece of data is -- should

23   not be factored into the Star Rating system, it prevents

24   plans from even submitting that data.  Is that what that

25   refers to?

```
 1                    MS. WIGGER:  I don't know that is actually true.

 2                    THE COURT:  Okay.

 3                    MS. WIGGER:  I just know in this case they

 4          literally could not upload their --

 5                    THE COURT:  And remind me what "HPMS" stands for.

 6                    MS. WIGGER:  That I do not know off the top of my

 7          head.

 8                    THE COURT:  Okay.

 9                    Okay.  So your central argument is that the

10          technical notes are incorporated into the regs; that,

11          notwithstanding what HMOLA's position was initially, the

12          inclusion of CO5 data should not occur because the consumed

13          contract had been terminated consistent with CMS's original

14          position; and therefore the action is arbitrary and

15          capricious.

16                    MS. WIGGER:  That is correct.  And we'd ask the

17          Court to set aside the Star Rating and order CMS to

18          recalculate it.

19                    THE COURT:  Okay.  Thank you.

20                    MS. WIGGER:  Thank you.

21                    THE COURT:  All right.  So you're Mr. Whitley?

22          Is that right?

23                    MR. WHITLEY:  That's right, Your Honor.

24                    THE COURT:  Where are you on detail from?

25                    MR. WHITLEY:  I'm in the office of general counsel
```

1    at the Department of Health and Human Services.

2            THE COURT:  All right.  So you probably know what

3    "HPMS" stands for.

4            MR. WHITLEY:  Yes, Your Honor.  For your

5    information, it's health plan management system.  I'm happy

6    to discuss it further.

7            I'm Special Assistant United States Attorney

8    Kenneth Whitley on behalf of the defendants.  Good

9    afternoon.  May it please the Court.

10           Your Honor, we're here today because HMOLA won't

11   take yes for an answer.  In September 2024 HMOLA asked CMS

12   to include special needs plan data from its consumed

13   contract in calculating the CO5 measure for its surviving

14   contract.  CMS agreed to do so.

15           HMOLA expected its overall score to increase from

16   3.5 to 4 stars.  When CMS permitted HMOLA to submit its

17   data, its Star Rating remained the same at 3.5 stars.

18           In this litigation, HMOLA is asking this Court to

19   require CMS to calculate its Star Rating for the

20   consolidated contract without the CO5 measure, which was

21   three stars, but to maintain the five stars it achieved on

22   the D11 measure.  This Court should reject this effort to

23   cherry-pick beneficial measure scores and jettison adverse

24   ones.

25           HMOLA was correct the first time.  The approach

1    CMS took was consistent with its regulations.

2              THE COURT:  Okay.

3              MR. WHITLEY:  Your Honor, I -- I'm sorry.

4              THE COURT:  Hold on.  So both sides have changed

5    their position obviously, right?  CMS started with the part

6    that the technical note required not -- you know, required

7    that CO5 data not be considered for the consumed contract,

8    all right.  At some point CMS changed its mind.

9              Now they changed their mind as well, but they're a

10   private party.  They're entitled to do that.  They're not

11   subject to the APA.  CMS is.

12             And so I guess my first question is, where in the

13   record does the government explain -- or where in the record

14   did CMS explain why it changed its position that the

15   technical note on terminated contracts prohibited

16   consideration of data on measurement CO5 in calculating the

17   25 Star Rating?

18             MR. WHITLEY:  Your Honor --

19             THE COURT:  Was it required to explain why it

20   changed its mind?

21             MR. WHITLEY:  The regulation set out a plan

22   preview process, Section 422.166(h)(2).  To set out the plan

23   preview process there are two planned previews that occur,

24   first in August and September, and that process exists to

25   allow individual contracts to, you know, ask for corrections

1    or clarifications about their Star Ratings.

2              CMS responded and accepted the corrections that

3    HMOLA asked for, and that explanation is at Pages 315 and

4    '16 of the record.

5              THE COURT:  Hold on.  315 and 316.

6              All right.  I have 315 and 316.  Where does CMS

7    explain why it changed its position and adopted HMOLA's

8    position?

9              MR. WHITLEY:  Sorry, just one second, Your Honor.

10             THE COURT:  Take your time.

11             The last sentence on 315?

12             MR. WHITLEY:  Yes, that's right.

13             THE COURT:  Okay.  So it basically says that it's

14   Louisiana Blue's request, and after further consideration

15   CMS agreed to accept Contract H5576's 2023 SNP data.

16             MR. WHITLEY:  That's right, Your Honor.

17             THE COURT:  Is that the sum and substance of CMS's

18   explanation for why it changed its position that the

19   technical note concerning terminated contracts applied?

20             MR. WHITLEY:  That's the sum of the explanation in

21   the record.  CMS's explanation is that the exclusion did not

22   apply.  CMS excluded special needs plan data from the

23   consumed contract because it improperly regarded that

24   contract as terminated.  That was incorrect.

25             THE COURT:  Okay.

1        MR. WHITLEY:  Because it regarded the consumed

2   contract as terminated, the line and guidance applied

3   regarding the data validations deadline and how it regarded

4   terminated contracts.

5        THE COURT:  Okay.  So an agency can change its

6   position, of course.  But doesn't it have to explain the

7   change under the APA?  And if so, the question then becomes

8   whether -- and this is -- I take it it's a form of informal

9   adjudication.  There's an adjudication over whether one

10  rating or another rating should apply.

11       To what extent does the agency have to explain its

12  change, and has it sufficiently explained it by way of this

13  sentence?

14       MR. WHITLEY:  Your Honor, the explanation CMS gave

15  was sufficient.  It is sufficient for CMS to say it agreed

16  with the request, HMOLA's request.

17       This is an informal adjudication, as you stated,

18  and so, you know, the plan preview process is meant to be

19  sort of an iterative process, a back-and-forth to allow

20  plans to express their questions about their -- and

21  objections to the way Star Ratings are calculated.  There's

22  no formal requirements that CMS issue an extensive decision.

23       Again, I direct you to Section 422.166(h)(2) of

24  the regulations that discuss the plan preview process.

25  There are no formal requirements for CMS to issue some kind

1    of extensive written opinion.

2    THE COURT:  So implicit in the -- I take it your

3    argument is implicit in the statement "CMS agreed to accept

4    Contract H5576's '23 SNP data" is "We agree with the

5    rationale that HMOLA offered during this consultative

6    process."

7    MR. WHITLEY:  Yes, Your Honor, that's correct.

8    I take HMOLA to be making two arguments in this

9    litigation.

10    The first is that if a surviving contract is not

11    the contract to have offered a special needs plan during the

12    measurement year, then that consolidated contract should not

13    be evaluated on the CO5 measure.  That's not supported by

14    CMS's regulations anywhere.

15    As Your Honor alluded to already, Sections

16    422.162(b)(3)(i) and 422.162(b)(3)(iv)(B)(1) create a

17    requirement that consolidated contracts be evaluated on

18    measure scores during a measure year for the consumed and

19    the surviving contract.

20    THE COURT:  Okay.  Well, address your colleague's

21    argument that while that may be generally so, the technical

22    notes create some specific exclusions to that general

23    principle, including one involving specifically Measure CO5.

24    MR. WHITLEY:  Your Honor, that's respectfully just

25    wrong.  The guidance creates an exception for terminated

1   contracts.

2           Again, the error that CMS made was in regarding

3   the consumed contract as terminated.  But the consumed

4   contract wasn't terminated for some of the reasons --

5           THE COURT:  What does it mean for a -- in the

6   normal course, putting aside consolidated contracts, what

7   does it mean to -- or under what circumstances is a contract

8   terminated?

9           MR. WHITLEY:  Your Honor, Sections 422.508, 510,

10  and 512 lay out the grounds for termination, and they are

11  varied.  Terminations can occur by agreement of the parties;

12  they can occur at CMS's initiation alone; or they can occur

13  because of the reason -- at the sort of initiation of the

14  Medicare Advantage organization.

15          There are various reasons that a contract might

16  terminate, but I would point out that a contract can

17  terminate any time during the year.  Not so with a consumed

18  contract.  Contract consolidation only occurs at the end of

19  a planned year, and as you already suggested, during a

20  contract consolidation enrollees from the consumed contract

21  become enrolled in the surviving consolidated contract.

22          When a contract is terminated, which, again, can

23  happen at any time during the year, there's a special

24  enrollment period.  Individuals can enroll in any plan or no

25  plan at all.  It's quite different than a consumed contract

1    which lives on in the surviving consolidated contract.

2          It really would make no sense for CMS to treat a

3    consumed contract the same way it does a terminated

4    contract, and the regulatory definitions make that clear.  A

5    consumed contract means a contract that will no longer exist

6    after a contract year's end as a result of consolidation.

7          This guidance is unique to termination, and it's

8    unique to termination for a reason, and that's that unlike a

9    contract consolidation, if there's a contract termination

10   before June 15th -- that's the date laid out in this line

11   and guidance -- the terminated contract will not receive a

12   Star Rating at all.

13         If it terminates after that date, the terminated

14   contract will likely receive a Star Rating, but that Star

15   Rating will not be made public.  It will be, you know, part

16   of the internal system for CMS and for the utility of the

17   plan.

18               THE COURT:  Okay.

19         MR. WHITLEY:  And so fundamentally, a consumed

20   contract is just different than a terminated contract, and

21   CMS was convinced by the rationale set forth in HMOLA's

22   communication.

23               THE COURT:  And the initial interpretation was

24   just erroneous.

25               MR. WHITLEY:  Your Honor, CMS's error was in

1    classifying the consumed contract as terminated.  Its

2    reading of the guidance is -- I mean, insofar as it read the

3    word "terminated" to cover consumed contract, that

4    interpretation was erroneous.

5              THE COURT:  Okay.  And it wasn't quite clear from

6    the papers, but how did that error get surfaced?  You know,

7    is there sort of an elevation process?  Does it go to the

8    general counsel's office or --

9              MR. WHITLEY:  That's right.  This instance is the

10   first time that this issue has ever been raised with CMS,

11   and that's just because there are not that many contract

12   consolidations in a year.  There not that many contract

13   consolidations that involve special needs plans, and, of

14   course, it's even less likely that there's a consumed

15   contract that offers special needs plans, and a surviving

16   contract does not.

17             Lastly, to further narrow this sort of range of

18   cases just for your information, this only occurs in the

19   second year after a consolidation.  So this isn't a frequent

20   problem, but yes, the HMOLA brought this problem to CMS for

21   the first time, and CMS brought this issue to the office of

22   general counsel.

23             THE COURT:  Okay.

24             MR. WHITLEY:  Your Honor, what I really want to

25   make clear is that either approach that HMOLA is advocating

1    here amounts to sort of a picking and choosing of measure

2    scores a la carte, and what I mean by that is if it's true

3    that the consumed contract really terminated on January 1,

4    2024, that means that, consistent with the guidance, they

5    shouldn't be -- the consolidated contract shouldn't be

6    evaluated on Measure CO5 but also Measure D11.  Measure D11

7    includes the same exclusion guidance that was at issue here,

8    but HMOLA's consolidated contract scored five stars on that,

9    on the D11 measure.  They're not before this Court asking,

10   you know, CMS to require that D11 be excluded.

11             On the other side, with regard to the theory

12   that --

13             THE COURT:  I get your point, but the plaintiff is

14   the master of his or her complaint, right?  And they can

15   challenge what they want to challenge.

16             MR. WHITLEY:  That's precisely right, Your Honor,

17   but what I'm saying -- what I'm articulating is that HMOLA

18   is not able to articulate a principled position.  The

19   positions that it's articulated not only are at odds with

20   CMS's rules, but are unprincipled.  And just as another

21   example, if HMOLA's consolidated contract, the surviving

22   contract, was required to be the one to offer special needs

23   plans in the 2023 measurement year, Measures CO6 and CO7

24   should also not apply because they're special needs plan

25   measures as well.  But, again, HMOLA scored five stars on

1      each of those measures.

2              I'm just trying to emphasize, Your Honor, that

3      this litigation is really an effort to cherry-pick the

4      beneficial measure scores and jettison the ones that are

5      adverse to HMOLA.

6              THE COURT:  Tell me this.  What if the surviving

7      plan did not offer -- or the surviving contract did not

8      offer a special needs plan.  Would it have been appropriate

9      nevertheless to incorporate the CO5 data for the consumed

10     plan?

11             MR. WHITLEY:  Your Honor, you're asking if the

12     consolidated contract didn't offer a special needs plan in

13     2025?

14             THE COURT:  Yes.

15             MR. WHITLEY:  It would be inappropriate for CMS to

16     evaluate the consolidated contract based on the CO5 measure,

17     and Section 422.162(b)(1) makes that clear.  The rule is

18     that if a plan in 2025 is offered a special needs plan in

19     either its consumed or -- sorry, a surviving or consumed

20     contract offered a special needs plan in 2023, that plan

21     would be evaluated on CO5 for the 2025 Star Rating.

22             THE COURT:  What sense would that make?

23             Well, if either of the consumed plan or the

24     surviving plan continued to offer special needs coverage.

25             MR. WHITLEY:  I'm sorry, your question --

1          THE COURT:  If the regulation is in the

2    disjunctive, all right?  If the consumed plan or the

3    consumed contract offered a special needs plan or the

4    surviving contract offered a special needs plan, then the

5    regulation requires CMS to consider the CO5 measure for the

6    consumed plan even though going forward it's not -- no one's

7    offering special needs services.

8          MR. WHITLEY:  I think you're misunderstanding.  If

9    in 2025 the consolidated contract is not offering a special

10   needs plan, then it would be inappropriate and at odds with

11   CMS's regulations to evaluate that plan on the CO5 measure

12   or any of the special needs plan measures.

13          THE COURT:  Okay.

14          MR. WHITLEY:  And, Your Honor, I really want to

15   emphasize, because I think HMOLA said it best in its

16   correspondence with the CMS, that for CMS to exclude the CO5

17   measure, quote, would negate the entire regulatory framework

18   for calculating Star Ratings following a contract

19   consolidation, which aims to prevent Medicare Advantage

20   organizations from consolidating a low-performing contract

21   into a higher-performing contract in order to shed the low

22   scores.  That's at Page 242 of the administrative record.

23          But, Your Honor, if this Court endorsed HMOLA's

24   approach in this case, it would incentivize plans to

25   consolidate the lower-performing plan into a higher

1    performing one.  And that really doesn't make much policy

2    sense, but more importantly it's at odds with CMS's

3    regulations, which, together, stand for the proposition that

4    consolidated contracts get evaluated on the basis of their

5    constituent parts.

6              THE COURT:  Okay.  One last question.  Do you

7    consider the technical notes to be binding or not?

8              MR. WHITLEY:  Your Honor, we do consider the

9    technical notes to be binding.  We do not consider the

10   regulations to have incorporated the technical notes.

11   Section 164A merely says that the measures are listed in

12   guidance.  That's not an incorporation of the guidance into

13   regulations, it's just an instruction to list measures in

14   the guidance.

15             I don't think that's an issue in this case because

16   the guidance here does not actually conflict with the

17   regulations.

18             THE COURT:  Okay.  So your position is that the

19   guidance is binding, but does not conflict with the

20   regulations and does not apply because this was not a

21   terminated contract?

22             MR. WHITLEY:  That is correct, Your Honor.

23             THE COURT:  Got it.  Okay.

24             MR. WHITLEY:  I just wanted to touch on one

25   question, which was why or what was the technical error?

1    Why was HMOLA unable to submit data?  And that's because the

2    health plan management system is keyed to the guidance, and

3    CMS's interpretation of consumed contracts as terminated

4    sort of governed that process, and as so it's correct that

5    HMOLA was unable, through the sort of portal for health

6    plans, to submit the relevant information.

7            THE COURT:  Okay.  So not only did you have to

8    change your position with respect to HMOLA, but you had to

9    reprogram the portal.

10           MR. WHITLEY:  That's correct.

11           THE COURT:  Okay.  Which is probably no small

12   task.

13           MR. WHITLEY:  You know, there are a number of

14   these portals that -- you know, for various CMS programs,

15   and they're quite skilled at bringing things up to speed.

16           I do believe that in this case the data was

17   submitted manually via email to CMS.

18           THE COURT:  Okay.  Right.  Thank you.

19           MR. WHITLEY:  If Your Honor has no further

20   questions, we ask that you grant the government's motion for

21   summary judgment and deny HMOLA's motion for summary

22   judgment.

23           THE COURT:  Ms. Wigger, last word.

24           MS. WIGGER:  Thank you, Your Honor.  I'd like to

25   address just a few points that were raised by CMS, and I

1    want to start with the agency's explanation for why it

2    changed its position in this case.

3                THE COURT:  Uh-huh.

4                MS. WIGGER:  So the agency, of course, if it is

5    going to change a position, as the Court noted, must offer a

6    reasoned basis for actually doing so.

7                THE COURT:  And does that apply -- does that

8    principle apply with full force in an informal adjudication

9    like this that's a back-and-forth consultation negotiation?

10               MS. WIGGER:  It does, because this didn't end in

11   informal adjudication.  This ended in a Star Rating, which

12   is a final agency action that impacted millions of people

13   who were receiving this healthcare service.

14               THE COURT:  But it's not a rule making.

15               MS. WIGGER:  It's not a rule making, but --

16               THE COURT:  It's an adjudication.  It's a

17   determination that's based on disputed facts and

18   interpretations of data, and there's a back-and-forth, and a

19   final agency decision results from that, which is why you're

20   able to come to court under the APA.

21               MS. WIGGER:  Yes.

22               THE COURT:  But it is nevertheless an informal

23   adjudication.

24               It's not a court proceeding, right?

25               MS. WIGGER:  That's true, Your Honor, but if the

1    agency is going to deviate from the regulations it puts out

2    to every other player in the market, it still has to give a

3    reasoned explanation for doing so.

4              THE COURT:  Okay.

5              MS. WIGGER:  And I want to look back at AR315 or

6    JA225.  The agency doesn't give and didn't give today any

7    explanation whatsoever, no matter how strong, for its

8    deviation.

9              THE COURT:  But why isn't implicit in that rather

10   terse -- granted -- explanation that we agree with the

11   rationale that you all have provided to us?

12             MS. WIGGER:  Because what the agency actually

13   said -- it spends a paragraph reciting HMO Louisiana's

14   position, which says nothing about its position very

15   carefully, and then it says nevertheless, we agree, quote,

16   to accept data along with your accompanying verifications.

17             There is a fundamental difference between

18   accepting data and applying the data.  And CMS has to

19   actually apply the data in a way that's consistent with the

20   regulations that it says it considers are binding and are,

21   in fact, binding in this case.  And our argument, as we

22   discussed earlier, of course, is that it just didn't do that

23   based on the plain text of those regulations.

24             THE COURT:  But viewed in context, in the context

25   of this, you know, months-long back-and-forth exchanging of

1    letters, exchanging of positions, why can't the Court, in

2    the terms of the APA or APA authority, reasonably discern

3    the agency's rationale and decision-making process?

4         MS. WIGGER:  Because the agency said absolutely

5    nothing about its rationale for its decision.  There is no

6    basis for the Court to do so because the agency didn't

7    explain -- again, as the Court noted, it didn't explain the

8    change that required it to accept data in a different way

9    for one specific measure, and so there is nothing on which

10   the Court can discern there.

11        THE COURT:  Assuming I agree with you, all right,

12   wouldn't the remedy not be vacatur but remand without

13   vacatur to allow the agency to beef up its explanation?

14        MS. WIGGER:  I think just a simple vacating and

15   remanding would be more effective.  As the Court, I'm sure,

16   knows, you can't -- the agency cannot give post hoc

17   justifications for its actions, and that's what it's done in

18   this case and no doubt what it would do on remand.  So the

19   Court should vacate this.

20        And, Your Honor, the Court has vacated -- this

21   Court, the District of Columbia, has vacated Star Ratings

22   cases for very similar reasons, for not appropriately

23   applying technical notes and other agency guidance.  And

24   those cases include the *Scan Healthcare* case, which was in

25   2024.  That's not a published case, but it's at Westlaw

1    2815789, and it includes the *Elevance* case, also from 2024,

2    also from this Court, at 736 Fed. Supp. 3d 1.  In both cases

3    the agency failed to apply its regulations, and the Court

4    vacated the Star Rating and had the agency recalculate the

5    Star Rating in that case.

6            There's another case out of Texas called *United*

7    *Healthcare* --

8            THE COURT:  Well, tell me this.  If I were to do

9    that, and the agency recalculated the Star Rating, wouldn't

10   that recalculation have to entail the other measure that you

11   all are not suing on?  If this is a general principle that

12   the agency misapplied in calculating HMOLA's Star Rating,

13   why wouldn't that principle apply to the other challenged

14   measure?

15           MS. WIGGER:  For starters, Your Honor, that other

16   measure, D11, is not before the Court, so the Court couldn't

17   make any ruling related to it.  And if that dispute were to

18   materialize, that would be dealt with separately.

19           However, I do want to address this cherry-picking

20   point that was raised by CMS, and I alluded to this earlier.

21   Each of these measures in the technical notes, like 40 or 50

22   of them, are different, and the exclusions are different,

23   and that includes CO5 and D11.

24           As I said earlier, CO5 relates to a specific

25   program that is offered or not.  D11 is a quality measure

1    that applies to every single plan.  The language of the

2    exclusion is different for the two of them.

3            So the exclusion language that we're relying on

4    here to say that CMS violated the plain text of its

5    regulations for CO5 says that the data is not available.

6            It has different language for D11.  I think it

7    says something to the effect of not required to report.

8            Those phrases, "data not available" and "not

9    required to report" are separately defined in the

10   regulations.  It's at JA186 --

11           THE COURT:  Okay.

12           MS. WIGGER:  -- I believe, and what they indicate

13   is that those measures are -- the application of data to

14   those measures is treated differently, and what we're

15   challenging here is the way the data was applied to Measure

16   CO5; not necessarily the fact that CMS accepted the data per

17   the letter that they sent after negotiations, but the way

18   that they chose to apply it here.  And our argument is that

19   for Measure CO5, the way that they applied it pretty much

20   indisputably violates the plain text of their binding

21   technical notes.

22           That's something CMS has never addressed.  They do

23   not argue that it violates the plain text of their technical

24   notes.  They point back to the federal code.  They say that

25   there's a difference now that they've found between

1     "termination" and "consolidation," which, as I said earlier,

2     is not supported by the definition of "consolidation" that's

3     in the federal code.  But they've never challenged that they

4     violated the plain text of the technical notes, and because

5     of that, their action is arbitrary and capricious.

6              THE COURT:  Okay.  Thank you.

7              MS. WIGGER:  Thank you.

8              THE COURT:  All right.  The Court will take the

9     matter under advisement.  We'll get something out sooner

10    rather than later, and we'll stand in recess.

11             (Whereupon the hearing was

12              adjourned at 3:53 p.m.)

13         **CERTIFICATE OF OFFICIAL COURT REPORTER**

14

15             I, LISA A. MOREIRA, RDR, CRR, do hereby

16    certify that the above and foregoing constitutes a true and

17    accurate transcript of my stenographic notes and is a full,

18    true and complete transcript of the proceedings to the best

19    of my ability.

20        Dated this 11th day of August, 2025.

21

22

                          /s/Lisa A. Moreira, RDR, CRR
23                        Official Court Reporter
                          United States Courthouse
24                        Room 6718
                          333 Constitution Avenue, NW
25                        Washington, DC 20001

**'**

**'16** [1] - 19:4
**'19** [1] - 15:9
**'23** [1] - 21:4
**'24** [2] - 6:24, 15:8

**/**

**/s/Lisa** [1] - 35:22

**1**

**1** [3] - 6:14, 25:3, 33:2
**11th** [1] - 35:20
**12** [1] - 15:8
**14** [1] - 6:24
**15** [1] - 6:6
**15th** [3] - 6:22, 11:20, 23:10
**164A** [1] - 28:11
**1:24-cv-02931-CRC** [1] - 1:3

**2**

**2** [2] - 1:4, 6:19
**20001** [2] - 1:25, 35:25
**20006** [1] - 1:15
**202** [3] - 1:15, 1:18, 1:25
**20201** [1] - 1:21
**2023** [3] - 19:15, 25:23, 26:20
**2024** [7] - 6:7, 6:22, 8:7, 17:11, 25:4, 32:25, 33:1
**2025** [7] - 1:4, 4:2, 26:13, 26:18, 26:21, 27:9, 35:20
**20530** [1] - 1:18
**2099** [1] - 1:14
**24-2931** [1] - 2:3
**242** [1] - 27:22
**25** [1] - 18:17
**2815789** [1] - 33:1

**3**

**3.5** [2] - 17:16, 17:17
**30,000** [1] - 13:1
**315** [4] - 19:3, 19:5, 19:6, 19:11
**316** [2] - 19:5, 19:6
**330** [1] - 1:21
**333** [2] - 1:24, 35:24
**354-3187** [1] - 1:25
**37** [1] - 5:18
**3:08** [1] - 1:5
**3:53** [1] - 35:12
**3d** [1] - 33:2

**4**

**4** [1] - 17:16
**40** [1] - 33:21
**42** [3] - 4:6, 6:3, 10:20
**422.161(b)(3)** [1] - 4:7
**422.162(a)** [1] - 10:21
**422.162(b)(1)** [1] - 26:17
**422.162(b)(3)(i)** [1] - 21:16
**422.162(b)(3)(iv)(B)(1** [1] - 21:16
**422.164(a)** [1] - 6:3
**422.166(h)(2** [1] - 20:23
**422.166(h)(2)** [1] - 18:22
**422.508** [1] - 22:9
**458-1733** [1] - 1:22

**5**

**50** [1] - 33:21
**510** [1] - 22:9
**512** [1] - 22:10
**5576** [1] - 6:25

**6**

**601** [1] - 1:17
**609** [1] - 1:22
**6453** [1] - 7:2
**6718** [2] - 1:24, 35:24

**7**

**736** [1] - 33:2
**747-2673** [1] - 1:15

**8**

**870-6770** [1] - 1:18

**A**

**ability** [1] - 35:19
**able** [3] - 14:13, 25:18, 30:20
**absolutely** [1] - 32:4
**accept** [5] - 7:10, 19:15, 21:3, 31:16, 32:8
**accepted** [3] - 10:5, 19:2, 34:16
**accepting** [1] - 31:18
**accompanying** [1] - 31:16
**accurate** [1] - 35:17
**achieved** [1] - 17:21
**act** [1] - 9:9
**action** [3] - 16:14,

30:12, 35:5
**Action** [1] - 2:3
**actions** [2] - 3:16, 32:17
**actual** [1] - 14:21
**address** [3] - 21:20, 29:25, 33:19
**addressed** [1] - 34:22
**adhere** [1] - 8:13
**adjourned** [1] - 35:12
**adjudication** [7] - 20:9, 20:17, 30:8, 30:11, 30:16, 30:23
**administration** [1] - 14:11
**administrative** [1] - 27:22
**administrators** [1] - 13:15
**adopt** [1] - 7:4
**adopted** [1] - 19:7
**Advantage** [2] - 22:14, 27:19
**adverse** [2] - 17:23, 26:5
**advisement** [1] - 35:9
**advocating** [1] - 24:25
**afternoon** [4] - 2:2, 2:9, 2:20, 17:9
**agency** [31] - 8:12, 8:13, 8:19, 8:22, 9:2, 9:9, 9:16, 9:17, 10:6, 10:9, 11:1, 11:15, 12:2, 20:5, 20:11, 30:4, 30:12, 30:19, 31:1, 31:6, 31:12, 32:4, 32:6, 32:13, 32:16, 32:23, 33:3, 33:4, 33:9, 33:12
**agency's** [4] - 10:18, 11:6, 30:1, 32:3
**agree** [4] - 21:4, 31:10, 31:15, 32:11
**agreed** [5] - 10:6, 17:14, 19:15, 20:15, 21:3
**agreement** [1] - 22:11
**aids** [1] - 3:12
**aims** [1] - 27:19
**al** [2] - 1:6, 2:5
**allow** [3] - 18:25, 20:19, 32:13
**alluded** [2] - 21:15, 33:20
**alone** [1] - 22:12
**alternative** [1] - 4:3
**amounts** [1] - 25:1
**AND** [2] - 1:6, 1:20
**answer** [1] - 17:11
**ANTHONY** [1] - 1:13

**APA** [13] - 3:8, 3:15, 8:1, 8:2, 8:22, 9:8, 9:9, 9:18, 18:11, 20:7, 30:20, 32:2
**APPEARANCES** [1] - 1:11
**application** [1] - 34:13
**applied** [7] - 5:2, 5:15, 6:1, 19:19, 20:2, 34:15, 34:19
**applies** [1] - 34:1
**apply** [12] - 10:3, 10:7, 19:22, 20:10, 25:24, 28:20, 30:7, 30:8, 31:19, 33:3, 33:13, 34:18
**applying** [2] - 31:18, 32:23
**approach** [4] - 2:7, 17:25, 24:25, 27:24
**appropriate** [1] - 26:8
**appropriately** [1] - 32:22
**AR** [2] - 5:18, 5:23
**AR315** [1] - 31:5
**AR317** [1] - 15:9
**AR319** [1] - 15:9
**AR45** [1] - 6:4
**arbitrarily** [1] - 9:24
**arbitrary** [4] - 9:9, 9:17, 16:14, 35:5
**argue** [1] - 34:23
**argument** [8] - 2:24, 16:9, 21:3, 21:21, 31:21, 34:18
**arguments** [1] - 21:8
**articulate** [1] - 25:18
**articulated** [1] - 25:19
**articulating** [1] - 25:17
**aside** [2] - 16:17, 22:6
**assessing** [1] - 11:8
**Assistant** [2] - 2:23, 17:7
**assume** [2] - 11:4, 11:5
**assuming** [1] - 32:11
**attachment** [1] - 6:8
**Attorney** [2] - 2:23, 17:7
**attributes** [1] - 14:2
**August** [2] - 18:24, 35:20
**authority** [4] - 8:20, 8:21, 9:7, 32:2
**available** [2] - 34:5, 34:8
**Avenue** [4] - 1:14, 1:21, 1:24, 35:24
**averages** [1] - 5:7

**B**

**back-and-forth** [4] - 20:19, 30:9, 30:18, 31:25
**Bardo** [1] - 2:20
**BARDO** [3] - 1:16, 2:20, 3:1
**based** [4] - 5:6, 26:16, 30:17, 31:23
**basic** [1] - 3:17
**basis** [3] - 28:4, 30:6, 32:6
**bear** [1] - 15:6
**become** [1] - 22:21
**becomes** [1] - 20:7
**beef** [1] - 32:13
**BEFORE** [1] - 1:10
**beginning** [2] - 2:6, 7:6, 7:22
**begins** [2] - 5:19, 5:22
**behalf** [2] - 2:21, 17:8
**beneficial** [2] - 17:23, 26:4
**benefits** [1] - 9:13
**best** [3] - 8:20, 27:15, 35:18
**between** [5] - 4:19, 4:20, 12:17, 31:17, 34:25
**binding** [13] - 8:11, 8:12, 8:14, 8:17, 8:18, 9:5, 28:7, 28:9, 28:19, 31:20, 31:21, 34:20
**bit** [1] - 12:7
**Blue's** [1] - 19:14
**Bonus** [1] - 3:10
**brief** [1] - 6:11
**bringing** [1] - 29:15
**brought** [2] - 24:20, 24:21
**but..** [1] - 2:19

**C**

**CA** [1] - 1:3
**calculate** [4] - 6:12, 8:24, 9:12, 17:19
**calculated** [2] - 5:8, 20:21
**calculates** [1] - 5:6
**calculating** [4] - 17:13, 18:16, 27:18, 33:12
**calculation** [4] - 3:20, 6:5, 6:9, 15:11
**calculations** [1] - 4:1
**cannot** [2] - 9:9, 32:16
**capricious** [3] - 9:18, 16:15, 35:5

capriciously [1] - 9:10
care [1] - 13:16
carefully [1] - 31:15
carte [1] - 25:2
case [19] - 4:23, 7:7, 7:23, 9:19, 9:21, 9:23, 12:20, 16:3, 27:24, 28:15, 29:16, 30:2, 31:21, 32:18, 32:24, 32:25, 33:1, 33:5, 33:6
cases [6] - 9:18, 9:22, 24:18, 32:22, 32:24, 33:2
central [1] - 16:9
certainly [1] - 14:1
CERTIFICATE [1] - 35:13
certify [1] - 35:16
cetera [1] - 9:1
CFR [3] - 4:6, 6:3, 10:20
challenge [3] - 3:3, 25:15
challenged [2] - 33:13, 35:3
challenging [1] - 34:15
change [7] - 7:17, 20:5, 20:7, 20:12, 29:8, 30:5, 32:8
changed [10] - 10:6, 10:9, 18:4, 18:8, 18:9, 18:14, 18:20, 19:7, 19:18, 30:2
cherry [3] - 17:23, 26:3, 33:19
cherry-pick [2] - 17:23, 26:3
cherry-picking [1] - 33:19
choosing [1] - 25:1
chose [1] - 34:18
CHRISTOPHER [1] - 1:10
circumstances [1] - 22:7
Civil [1] - 2:3
claims [1] - 3:15
clarifications [1] - 19:1
classifying [1] - 24:1
clear [4] - 23:4, 24:5, 24:25, 26:17
CMS [54] - 3:7, 4:3, 4:23, 4:24, 5:1, 5:2, 5:6, 6:4, 6:9, 6:21, 7:4, 7:7, 7:25, 15:9, 15:21, 16:17, 17:11, 17:14, 17:16, 17:19,

18:1, 18:5, 18:8, 18:11, 18:14, 19:2, 19:6, 19:15, 19:22, 20:14, 20:15, 20:22, 20:25, 21:3, 22:2, 23:2, 23:16, 23:21, 24:10, 24:20, 24:21, 25:10, 26:15, 27:5, 27:16, 29:14, 29:17, 29:25, 31:18, 33:20, 34:4, 34:16, 34:22
CMS's [16] - 3:15, 3:20, 4:1, 6:24, 15:15, 15:18, 16:13, 19:17, 19:21, 21:14, 22:12, 23:25, 25:20, 27:11, 28:2, 29:3
co [1] - 2:11
co-counsel [1] - 2:11
CO2 [1] - 4:14
CO5 [31] - 4:14, 5:11, 5:16, 5:22, 6:2, 6:5, 6:13, 6:25, 11:19, 12:5, 12:15, 12:16, 16:12, 17:13, 17:20, 18:7, 18:16, 21:13, 21:23, 25:6, 26:9, 26:16, 26:21, 27:5, 27:11, 27:16, 33:23, 33:24, 34:5, 34:16, 34:19
CO6 [1] - 25:23
CO7 [1] - 25:23
Code [1] - 5:14
code [2] - 34:24, 35:3
colleague's [1] - 21:20
collect [1] - 5:1
COLUMBIA [1] - 1:1
Columbia [1] - 32:21
combine [1] - 13:4
combined [1] - 14:7
comment [2] - 9:1, 12:3
communication [1] - 23:22
complaining [1] - 7:5
complaint [1] - 25:14
complete [1] - 35:18
comply [2] - 8:1, 8:3
computer [1] - 15:15
concept [1] - 10:19
concerning [1] - 19:19
conflict [2] - 28:16, 28:19
consider [8] - 11:13, 11:24, 12:3, 12:8, 27:5, 28:7, 28:8, 28:9
consideration [3] - 4:14, 18:16, 19:14

considered [1] - 18:7
considers [2] - 14:15, 31:20
consistent [5] - 15:19, 16:13, 18:1, 25:4, 31:19
consolidate [1] - 27:25
consolidated [15] - 5:8, 11:8, 17:20, 21:12, 21:17, 22:6, 22:21, 23:1, 25:5, 25:8, 25:21, 26:12, 26:16, 27:9, 28:4
consolidating [1] - 27:20
consolidation [13] - 5:6, 7:1, 10:8, 10:19, 10:23, 22:18, 22:20, 23:6, 23:9, 24:19, 27:19, 35:1, 35:2
consolidations [2] - 24:12, 24:13
constituent [1] - 28:5
constitutes [1] - 35:16
Constitution [2] - 1:24, 35:24
consult [1] - 14:14
consultation [1] - 30:9
consultative [1] - 21:5
consumed [33] - 6:16, 7:1, 10:20, 10:21, 12:4, 14:2, 14:17, 16:12, 17:12, 18:7, 19:23, 20:1, 21:18, 22:3, 22:17, 22:20, 22:25, 23:3, 23:5, 23:19, 24:1, 24:3, 24:14, 25:3, 26:9, 26:19, 26:23, 27:2, 27:3, 27:6, 29:3
consumers [1] - 14:13
context [4] - 4:24, 5:1, 31:24
continuation [2] - 13:11, 14:10
continued [1] - 26:24
continues [2] - 13:8, 13:9
continuing [1] - 14:16
contract [84] - 6:16, 6:17, 8:7, 10:4, 10:8, 10:16, 10:17, 10:20, 10:22, 11:2, 11:3, 11:5, 11:8, 12:21, 13:6, 13:7, 13:9, 13:24, 13:25, 14:7, 14:10, 14:12, 14:20, 14:22, 15:11, 16:13, 17:13, 17:14, 17:20,

18:7, 19:23, 19:24, 20:2, 21:10, 21:11, 21:12, 21:19, 22:3, 22:4, 22:7, 22:15, 22:16, 22:18, 22:20, 22:21, 22:22, 22:25, 23:1, 23:3, 23:4, 23:5, 23:6, 23:9, 23:11, 23:14, 23:20, 24:1, 24:3, 24:11, 24:12, 24:15, 24:16, 25:3, 25:5, 25:8, 25:21, 25:22, 26:7, 26:12, 26:16, 26:20, 27:3, 27:4, 27:9, 27:18, 27:20, 27:21, 28:21
Contract [5] - 6:25, 7:2, 15:12, 19:15, 21:4
contracts [22] - 4:3, 5:8, 6:5, 6:15, 6:20, 7:13, 8:6, 11:7, 12:4, 12:20, 13:4, 13:20, 14:7, 18:15, 18:25, 19:19, 20:4, 21:17, 22:1, 22:6, 28:4, 29:3
contracts' [1] - 12:5
contrary [3] - 4:2, 4:5, 4:6
control [1] - 15:2
controls [1] - 12:1
convinced [2] - 7:4, 23:21
COOPER [1] - 1:10
correct [11] - 4:8, 8:9, 11:4, 13:12, 13:16, 16:16, 17:25, 21:7, 28:22, 29:4, 29:10
corrections [2] - 18:25, 19:2
correspondence [2] - 11:3, 27:16
cost [2] - 3:9, 3:11
counsel [5] - 2:6, 2:11, 2:21, 16:25, 24:22
counsel's [1] - 24:8
course [3] - 20:6, 22:6, 24:14, 30:4, 31:22
court [2] - 30:20, 30:24
Court [23] - 1:23, 1:23, 16:17, 17:9, 17:18, 17:22, 25:9, 27:23, 30:5, 32:1, 32:6, 32:7, 32:10, 32:15, 32:19, 32:20, 32:21, 33:2, 33:3, 33:16, 35:8, 35:23

COURT [104] - 1:1, 2:13, 2:16, 2:18, 2:25, 3:2, 3:5, 3:21, 3:25, 4:5, 4:10, 4:12, 4:16, 4:21, 5:4, 5:17, 5:21, 5:25, 6:23, 7:9, 7:16, 7:24, 8:3, 8:8, 8:10, 8:16, 8:20, 8:25, 9:7, 9:16, 9:20, 10:1, 10:11, 10:14, 11:4, 11:18, 11:22, 12:2, 12:11, 12:14, 12:24, 13:1, 13:4, 13:6, 13:14, 13:18, 13:22, 14:1, 14:5, 14:9, 14:23, 15:4, 15:8, 15:21, 16:2, 16:5, 16:8, 16:19, 16:21, 16:24, 17:2, 18:2, 18:4, 18:19, 19:5, 19:10, 19:13, 19:17, 19:25, 20:5, 21:2, 21:20, 22:5, 23:18, 23:23, 24:5, 24:23, 25:13, 26:6, 26:14, 26:22, 27:1, 27:13, 28:6, 28:18, 28:23, 29:7, 29:11, 29:18, 29:23, 30:3, 30:7, 30:14, 30:16, 30:22, 31:4, 31:9, 31:24, 32:11, 33:8, 34:11, 35:6, 35:8, 35:13
Courthouse [2] - 1:24, 35:23
COURTROOM [1] - 2:2
cover [2] - 5:10, 24:3
coverage [1] - 26:24
create [2] - 21:16, 21:22
creates [1] - 21:25
CRR [3] - 1:23, 35:15, 35:22
cutoffs [1] - 12:10

**D**

D.C [1] - 1:4
D11 [9] - 17:22, 25:6, 25:9, 25:10, 33:16, 33:23, 33:25, 34:6
data [41] - 5:1, 5:3, 5:15, 6:1, 6:21, 6:25, 7:13, 8:5, 9:12, 11:7, 11:13, 11:24, 12:5, 12:9, 15:12, 15:19, 15:22, 15:24, 16:12, 17:12, 17:17, 18:7, 18:16, 19:15, 19:22,

20:3, 21:4, 26:9, 29:1, 29:16, 30:18, 31:16, 31:18, 31:19, 32:8, 34:5, 34:8, 34:13, 34:15, 34:16
**date** [7] - 6:6, 6:20, 8:6, 11:20, 11:21, 23:10, 23:13
**Dated** [1] - 35:20
**dates** [2] - 12:12
**DC** [5] - 1:15, 1:18, 1:21, 1:25, 35:25
**deadline** [2] - 6:21, 20:3
**dealt** [1] - 33:18
**decided** [1] - 12:3
**decision** [4] - 20:22, 30:19, 32:3, 32:5
**decision-making** [1] - 32:3
**decisions** [1] - 9:8
**declaratory** [1] - 3:15
**defendants** [1] - 17:8
**Defendants** [1:7, 1:16
**define** [2] - 10:18, 10:20
**defined** [3] - 10:21, 11:25, 34:9
**definition** [2] - 10:21, 35:2
**definitions** [1] - 23:4
**dental** [1] - 3:12
**deny** [1] - 29:21
**Department** [2] - 2:4, 17:1
**DEPARTMENT** [2] - 1:6, 1:20
**DEPUTY** [1] - 2:2
**Despite** [1] - 15:10
**detail** [1] - 16:24
**determination** [2] - 15:22, 30:17
**determine** [1] - 9:12
**deviate** [1] - 31:1
**deviates** [1] - 9:16
**deviation** [1] - 31:8
**difference** [2] - 31:17, 34:25
**different** [14] - 5:1, 12:10, 12:13, 13:20, 13:21, 22:25, 23:20, 32:8, 33:22, 34:2, 34:6
**differently** [3] - 9:11, 9:25, 34:14
**difficulty** [1] - 15:5
**direct** [1] - 20:23
**directive** [1] - 11:24
**directly** [2] - 5:10, 5:15

**discern** [2] - 32:2, 32:10
**discontinued** [1] - 14:17
**discuss** [2] - 17:6, 20:24
**discussed** [1] - 31:22
**discussions** [1] - 4:24
**disjunctive** [1] - 27:2
**dispute** [3] - 4:18, 10:16, 33:17
**disputed** [1] - 30:17
**distinct** [1] - 10:19
**District** [1] - 32:21
**DISTRICT** [3] - 1:1, 1:1, 1:10
**doctors** [1] - 14:10
**DOJ** [1] - 1:17
**DOJ-USAO** [1] - 1:17
**dollars** [2] - 3:9, 9:13
**done** [2] - 7:8, 32:17
**doubt** [1] - 32:18
**down** [1] - 3:22
**Drouaud** [1] - 2:12
**DROUAUD** [1] - 1:13
**due** [1] - 15:12
**during** [6] - 21:5, 21:11, 21:18, 22:17, 22:19, 22:23

**E**

**earful** [1] - 2:13
**effect** [2] - 13:11, 34:7
**effective** [4] - 6:6, 6:20, 8:6, 32:15
**effort** [2] - 17:22, 26:3
**either** [3] - 24:25, 26:19, 26:23
**Elevance** [1] - 33:1
**elevation** [1] - 24:7
**email** [2] - 15:8, 29:17
**emphasize** [2] - 26:2, 27:15
**end** [4] - 10:23, 22:18, 23:6, 30:10
**ended** [1] - 30:11
**endorsed** [1] - 27:23
**enroll** [1] - 22:24
**enrolled** [1] - 22:21
**enrollees** [3] - 13:12, 13:15, 22:20
**enrollment** [3] - 5:7, 5:8, 22:24
**entail** [1] - 33:10
**entire** [1] - 27:17
**entitled** [3] - 3:14, 7:16, 18:10
**erroneous** [2] - 23:24, 24:4

**error** [5] - 3:8, 22:2, 23:25, 24:6, 28:25
**ESQ** [6] - 1:12, 1:12, 1:13, 1:13, 1:16, 1:19
**et** [3] - 1:6, 2:5, 9:1
**evaluate** [2] - 26:16, 27:11
**evaluated** [7] - 6:17, 12:22, 21:13, 21:17, 25:6, 26:21, 28:4
**exact** [1] - 14:1
**exactly** [1] - 13:25
**example** [1] - 25:21
**exception** [1] - 21:25
**exchanging** [2] - 31:25, 32:1
**exclude** [3] - 6:5, 6:19, 27:16
**excluded** [3] - 8:7, 19:22, 25:10
**exclusion** [8] - 6:24, 11:12, 11:19, 11:20, 19:21, 25:7, 34:2, 34:3
**exclusions** [4] - 11:17, 12:10, 21:22, 33:22
**exist** [3] - 10:22, 10:24, 23:5
**existed** [1] - 13:24
**exists** [2] - 13:24, 18:24
**expected** [2] - 7:18, 17:15
**explain** [8] - 18:13, 18:14, 18:19, 19:7, 20:6, 20:11, 32:7
**explained** [1] - 20:12
**explanation** [10] - 19:3, 19:18, 19:20, 19:21, 20:14, 30:1, 31:3, 31:7, 31:10, 32:13
**express** [1] - 20:20
**extensive** [1] - 20:22, 21:1
**extent** [1] - 20:11

**F**

**facilities** [1] - 14:10
**fact** [3] - 4:14, 31:21, 34:16
**factored** [1] - 15:23
**facts** [1] - 30:17
**failed** [1] - 33:3
**fair** [4] - 10:5, 13:23, 14:3, 14:21
**Fed** [1] - 33:2
**federal** [2] - 34:24,

35:3
**Federal** [1] - 5:14
**feet** [1] - 13:2
**few** [1] - 29:25
**final** [2] - 30:12, 30:19
**First** [1] - 3:20
**first** [9] - 5:5, 8:11, 11:9, 17:25, 18:12, 18:24, 21:10, 24:10, 24:21
**five** [3] - 17:21, 25:8, 25:25
**flatly** [1] - 11:6
**following** [1] - 27:18
**FOR** [1] - 1:1
**force** [1] - 30:8
**foregoing** [1] - 35:16
**form** [1] - 20:8
**formal** [2] - 20:22, 20:25
**forth** [6] - 6:10, 20:19, 23:21, 30:9, 30:18, 31:25
**forward** [1] - 27:6
**framework** [1] - 27:17
**free** [1] - 3:24
**frequent** [1] - 24:19
**full** [2] - 30:8, 35:17
**fundamental** [1] - 31:17
**fundamentally** [2] - 15:3, 23:19

**G**

**general** [8] - 5:12, 11:13, 11:23, 16:25, 21:22, 24:8, 24:22, 33:11
**generally** [1] - 21:21
**global** [1] - 4:23
**governed** [1] - 29:4
**government** [3] - 2:21, 4:4, 18:13
**government's** [1] - 29:20
**grant** [1] - 29:20
**granted** [1] - 31:10
**grounds** [1] - 22:10
**guess** [1] - 18:12
**guidance** [17] - 8:12, 9:2, 9:17, 20:2, 21:25, 23:7, 23:11, 24:2, 25:4, 25:7, 28:12, 28:14, 28:16, 28:19, 29:2, 32:23
**guys** [1] - 2:13

**H**

**H5576** [1] - 15:12
**H5576's** [2] - 19:15, 21:4
**HAMPTON** [1] - 1:14
**hand** [1] - 9:14
**Hannah** [1] - 2:10
**HANNAH** [1] - 1:12
**happy** [1] - 17:5
**head** [1] - 16:7
**HEALTH** [2] - 1:6, 1:20
**health** [3] - 17:5, 29:2, 29:5
**Health** [2] - 2:4, 17:1
**Healthcare** [2] - 32:24, 33:7
**healthcare** [1] - 30:13
**hear** [1] - 7:18
**HEARING** [1] - 1:9
**hearing** [4] - 2:3, 2:16, 3:12, 35:11
**HELD** [1] - 1:10
**helpful** [1] - 14:14
**hereby** [1] - 35:15
**higher** [2] - 27:21, 27:25
**higher-performing** [1] - 27:21
**hit** [1] - 15:2
**HMO** [13] - 1:2, 2:3, 2:10, 3:9, 3:14, 3:20, 4:1, 4:2, 4:22, 7:7, 7:14, 7:22, 31:13
**HMOLA** [20] - 4:12, 15:11, 17:10, 17:11, 17:15, 17:16, 17:18, 17:25, 19:3, 21:5, 21:8, 24:20, 24:25, 25:17, 25:25, 26:5, 27:15, 29:1, 29:5, 29:8
**HMOLA's** [10] - 10:2, 16:11, 19:7, 20:16, 23:21, 25:8, 25:21, 27:23, 29:21, 33:12
**hoc** [1] - 32:16
**hold** [4] - 5:21, 15:6, 18:4, 19:5
**homes** [1] - 13:16
**Honor** [36] - 2:10, 2:20, 3:1, 3:4, 3:6, 4:11, 4:18, 5:19, 7:6, 12:15, 16:23, 17:4, 17:10, 18:3, 18:18, 19:9, 19:16, 20:14, 21:7, 21:15, 21:24, 22:9, 23:25, 24:24, 25:16, 26:2, 26:11, 27:14, 27:23, 28:8,

28:22, 29:19, 29:24, 30:25, 32:20, 33:15
**HONORABLE** [1] - 1:10
**HPMS** [4] - 15:13, 15:14, 16:5, 17:3
**Human** [2] - 2:4, 17:1
**HUMAN** [2] - 1:6, 1:20

**I**

**identify** [1] - 2:7
**Ill** [1] - 1:13
**Imad** [1] - 2:12
**IMAD** [1] - 1:12
**impacted** [1] - 30:12
**implicit** [3] - 21:2, 21:3, 31:9
**importantly** [1] - 28:2
**improperly** [1] - 19:23
**IN** [1] - 1:1
**inappropriate** [2] - 26:15, 27:10
**Inc** [1] - 2:4
**INC** [1] - 1:2
**incentivize** [1] - 27:24
**include** [2] - 17:12, 32:24
**includes** [3] - 25:7, 33:1, 33:23
**including** [3] - 3:11, 12:17, 21:23
**inclusion** [2] - 7:12, 16:12
**inconsistent** [1] - 11:6
**incorporate** [1] - 26:9
**incorporated** [8] - 4:9, 5:14, 6:2, 8:15, 8:16, 9:4, 16:10, 28:10
**incorporation** [1] - 28:12
**incorrect** [1] - 19:24
**increase** [1] - 17:15
**Independence** [1] - 1:21
**indicate** [1] - 34:12
**indisputably** [1] - 34:20
**individual** [1] - 18:25
**individuals** [1] - 22:24
**informal** [6] - 9:2, 20:8, 20:17, 30:8, 30:11, 30:22
**information** [3] - 17:5, 24:18, 29:6
**initial** [1] - 23:23
**initiation** [2] - 22:12, 22:13
**insofar** [1] - 24:2
**instance** [1] - 24:9

**instruction** [1] - 28:13
**instructive** [1] - 14:25
**internal** [2] - 9:2, 23:16
**interpret** [1] - 9:9
**interpretation** [4] - 7:12, 23:23, 24:4, 29:3
**interpretations** [1] - 30:18
**interrupt** [1] - 3:24
**involve** [1] - 24:13
**involving** [1] - 21:23
**issue** [18] - 4:20, 5:2, 5:3, 5:20, 7:25, 12:17, 15:13, 15:14, 15:15, 15:16, 15:17, 20:22, 20:25, 24:10, 24:21, 25:7, 28:15
**issued** [1] - 3:7
**issues** [1] - 7:20
**iterative** [1] - 20:19
**itself** [1] - 11:1

**J**

**JA127** [2] - 6:9, 6:19
**JA186** [1] - 34:10
**JA217** [1] - 11:3
**JA225** [1] - 31:6
**JA45** [2] - 5:23, 6:1
**January** [1] - 25:3
**jettison** [2] - 17:23, 26:4
**John** [1] - 2:20
**JOHN** [1] - 1:16
**joined** [2] - 2:11, 2:21
**JUDGE** [1] - 1:10
**judgment** [4] - 3:14, 3:15, 29:21, 29:22
**July** [2] - 1:4, 5:9
**June** [5] - 6:6, 6:22, 8:7, 11:20, 23:10
**justifications** [1] - 32:17

**K**

**Ken** [1] - 2:22
**Kenneth** [1] - 17:8
**KENNETH** [1] - 1:19
**keyed** [1] - 29:2
**kind** [2] - 3:12, 20:25
**knows** [1] - 32:16
**Kristin** [1] - 2:22

**L**

**laid** [1] - 23:10
**language** [3] - 34:1, 34:3, 34:6

**last** [3] - 19:11, 28:6, 29:23
**lastly** [1] - 24:17
**lay** [1] - 22:10
**lead** [1] - 2:23
**lease** [1] - 6:15
**least** [2] - 9:21, 9:22
**lectern** [1] - 2:7
**less** [1] - 24:14
**letter** [3] - 6:24, 7:21, 34:17
**letters** [1] - 32:1
**likely** [3] - 13:13, 23:14, 24:14
**line** [2] - 20:2, 23:10
**Lisa** [1] - 1:23
**LISA** [1] - 35:15
**list** [1] - 28:13
**listed** [1] - 28:11
**lists** [1] - 11:12
**literally** [2] - 15:18, 16:4
**litigation** [3] - 17:18, 21:9, 26:3
**lives** [1] - 23:1
**LLP** [1] - 1:14
**look** [5] - 8:2, 11:11, 11:15, 11:16, 31:5
**looking** [1] - 7:15
**Louisiana** [10] - 2:4, 2:11, 3:9, 3:14, 4:3, 4:22, 7:7, 7:14, 7:22, 19:14
**LOUISIANA** [1] - 1:2
**Louisiana's** [3] - 3:20, 4:1, 31:13
**low** [2] - 27:20, 27:21
**low-performing** [1] - 27:20
**lower** [1] - 27:25
**lower-performing** [1] - 27:25

**M**

**main** [1] - 4:10
**maintain** [1] - 17:21
**managed** [1] - 4:4
**management** [3] - 13:21, 17:5, 29:2
**manually** [1] - 29:17
**market** [1] - 31:2
**massive** [1] - 15:1
**master** [1] - 25:14
**materialize** [1] - 33:18
**MATINI** [2] - 1:12, 2:17
**Matini** [1] - 2:12
**matter** [3] - 2:11, 31:7, 35:9
**mean** [6] - 10:23,

10:24, 22:5, 22:7, 24:2, 25:2
**means** [2] - 23:5, 25:4
**meant** [1] - 20:18
**Measure** [13] - 5:11, 5:15, 5:22, 6:2, 6:5, 6:12, 6:25, 21:23, 25:6, 34:15, 34:19
**measure** [24] - 4:14, 5:3, 11:17, 12:16, 12:19, 17:13, 17:20, 17:22, 17:23, 21:13, 21:18, 25:1, 25:9, 26:4, 26:16, 27:5, 27:11, 27:17, 32:9, 33:10, 33:14, 33:16, 33:25
**measurement** [3] - 18:16, 21:12, 25:23
**measurements** [1] - 12:5
**Measures** [1] - 25:23
**measures** [18] - 4:19, 4:25, 5:2, 11:12, 11:15, 11:16, 11:20, 12:10, 12:17, 15:12, 25:25, 26:1, 27:12, 28:11, 28:13, 33:21, 34:13, 34:14
**Medicare** [4] - 4:4, 22:14, 27:19
**members** [1] - 3:11
**merely** [1] - 28:11
**might** [1] - 22:15
**Miller** [2] - 15:9, 15:10
**millions** [3] - 3:9, 9:13, 30:12
**mind** [3] - 18:8, 18:9, 18:20
**misapplied** [1] - 33:12
**misunderstanding** [1] - 27:8
**months** [1] - 31:25
**months-long** [1] - 31:25
**MOREIRA** [1] - 35:15
**Moreira** [2] - 1:23, 35:22
**MOTION** [1] - 1:9
**motion** [3] - 2:3, 29:20, 29:21
**MR** [34] - 2:17, 2:20, 3:1, 16:23, 16:25, 17:4, 18:3, 18:18, 18:21, 19:9, 19:12, 19:16, 19:20, 20:1, 20:14, 21:7, 21:24, 22:9, 23:19, 23:25, 24:9, 24:24, 25:16, 26:11, 26:15, 26:25,

27:8, 27:14, 28:8, 28:22, 28:24, 29:10, 29:13, 29:19
**MS** [67] - 2:9, 2:15, 3:4, 3:6, 3:23, 4:1, 4:8, 4:11, 4:15, 4:18, 4:22, 5:12, 5:19, 5:22, 6:1, 7:6, 7:14, 7:21, 7:25, 8:5, 8:9, 8:14, 8:18, 8:22, 9:6, 9:8, 9:19, 9:21, 10:9, 10:12, 10:15, 11:10, 11:19, 11:23, 12:7, 12:12, 12:15, 12:25, 13:3, 13:5, 13:13, 13:17, 13:19, 13:23, 14:4, 14:6, 14:18, 14:24, 15:17, 16:1, 16:3, 16:6, 16:16, 16:20, 29:24, 30:4, 30:10, 30:15, 30:21, 30:25, 31:5, 31:12, 32:4, 32:14, 33:15, 34:12, 35:7
**MULLIN** [1] - 1:14
**must** [1] - 30:5

**N**

**name** [1] - 2:10
**narrow** [1] - 24:17
**necessarily** [1] - 34:16
**need** [2] - 14:3, 14:13
**needs** [24] - 3:10, 13:7, 13:8, 13:10, 14:13, 14:15, 14:19, 17:12, 19:22, 21:11, 24:13, 24:15, 25:22, 25:24, 26:8, 26:12, 26:18, 26:20, 26:24, 27:3, 27:4, 27:7, 27:10, 27:12
**negate** [1] - 27:17
**negotiation** [2] - 4:13, 30:9
**negotiations** [2] - 10:2, 34:17
**never** [4] - 6:17, 34:22, 35:3
**nevertheless** [4] - 9:17, 26:9, 30:22, 31:15
**nonbinding** [1] - 9:17
**normal** [1] - 22:6
**note** [9] - 5:17, 7:12, 8:8, 9:3, 10:3, 10:7, 18:6, 18:15, 19:19
**noted** [2] - 30:5, 32:7
**notes** [17] - 4:8, 5:13, 6:8, 11:11, 11:14,

15:20, 16:10, 21:22, 28:7, 28:9, 28:10, 32:23, 33:21, 34:21, 34:24, 35:4, 35:17
**nothing** [4] - 14:18, 31:14, 32:5, 32:9
**notice** [2] - 9:1, 12:2
**notwithstanding** [1] - 16:11
**nuanced** [1] - 12:8
**number** [2] - 5:23, 29:13
**numbers** [1] - 5:24
**nursing** [1] - 13:15
**NW** [4] - 1:14, 1:17, 1:24, 35:24

## O

**objected** [1] - 7:11
**objecting** [1] - 6:24
**objections** [1] - 20:21
**objective** [1] - 3:17
**obligation** [1] - 11:7
**obviously** [1] - 18:5
**occur** [5] - 16:12, 18:23, 22:11, 22:12
**occurs** [2] - 22:18, 24:18
**October** [1] - 6:24
**odds** [3] - 25:19, 27:10, 28:2
**OF** [5] - 1:1, 1:6, 1:9, 1:20, 35:13
**offer** [10] - 6:15, 13:8, 13:9, 14:3, 25:22, 26:7, 26:8, 26:12, 26:24, 30:5
**offered** [10] - 3:7, 6:17, 13:6, 21:5, 21:11, 26:18, 26:20, 27:3, 27:4, 33:25
**offering** [2] - 27:7, 27:9
**offers** [1] - 24:15
**office** [3] - 16:25, 24:8, 24:21
**Official** [1] - 1:23
**OFFICIAL** [1] - 35:13
**official** [1] - 35:23
**one** [14] - 5:3, 6:15, 10:22, 12:17, 13:6, 15:4, 19:9, 20:9, 21:23, 25:22, 28:1, 28:6, 28:24, 32:9
**one's** [1] - 27:6
**ones** [2] - 17:24, 26:4
**operative** [1] - 6:3
**opinion** [1] - 21:1
**opposed** [2] - 4:17,

12:19
**opposite** [1] - 7:3
**opposition** [1] - 6:11
**order** [3] - 9:12, 16:17, 27:21
**organization** [1] - 22:14
**organizations** [1] - 27:20
**original** [1] - 16:13
**overall** [3] - 14:24, 15:1, 17:15
**overlap** [2] - 13:14, 14:9
**own** [2] - 3:8, 4:2

## P

**p.m** [2] - 1:5, 35:12
**Page** [2] - 5:18, 27:22
**Pages** [1] - 19:3
**papers** [1] - 24:6
**paragraph** [1] - 31:13
**part** [3] - 9:10, 18:5, 23:15
**particular** [1] - 15:22
**parties** [5] - 4:19, 4:20, 9:11, 12:18, 22:11
**parts** [1] - 28:5
**party** [1] - 18:10
**Paul** [1] - 2:11
**PAUL** [1] - 1:13
**pause** [1] - 5:4
**Pause** [1] - 15:7
**Payments** [1] - 3:10
**Pennsylvania** [1] - 1:14
**people** [3] - 12:22, 13:16, 30:12
**per** [1] - 34:16
**performing** [4] - 27:20, 27:21, 27:25, 28:1
**period** [1] - 22:24
**permitted** [1] - 17:16
**phrases** [1] - 34:8
**pick** [2] - 17:23, 26:3
**picking** [1] - 25:1, 33:19
**piece** [2] - 10:13, 15:22
**place** [1] - 12:13
**plain** [6] - 3:16, 31:23, 34:4, 34:20, 34:23, 35:4
**Plaintiff** [2] - 1:3, 1:12
**plaintiff** [2] - 2:6, 25:13
**plan** [46] - 6:15, 6:17, 13:7, 13:8, 13:9,

13:10, 13:12, 13:15, 13:24, 14:2, 14:12, 14:15, 14:17, 17:5, 17:12, 18:21, 18:22, 19:22, 20:18, 20:24, 21:11, 22:24, 22:25, 23:17, 25:24, 26:7, 26:8, 26:10, 26:12, 26:18, 26:20, 26:23, 26:24, 27:2, 27:3, 27:4, 27:6, 27:10, 27:11, 27:12, 27:25, 29:2, 34:1
**plan's** [1] - 3:18
**planned** [2] - 18:23, 22:19
**plans** [8] - 14:3, 15:24, 20:20, 24:13, 24:15, 25:23, 27:24, 29:6
**player** [1] - 31:2
**plenty** [1] - 3:25
**point** [6] - 5:20, 18:8, 22:16, 25:13, 33:20, 34:24
**points** [1] - 29:25
**policies** [1] - 13:25
**policy** [1] - 28:1
**pool** [1] - 13:20
**portal** [2] - 29:5, 29:9
**portals** [1] - 29:14
**position** [27] - 4:13, 6:23, 7:3, 7:4, 7:11, 7:17, 7:19, 9:20, 10:2, 10:5, 10:6, 10:10, 16:11, 16:14, 18:5, 18:14, 19:7, 19:8, 19:18, 20:6, 25:18, 28:18, 29:8, 30:2, 30:5, 31:14
**positions** [3] - 10:2, 25:19, 32:1
**post** [1] - 32:16
**potentially** [2] - 13:17, 13:21
**precisely** [1] - 25:16
**presence** [1] - 12:18
**pretty** [1] - 34:19
**prevent** [1] - 27:19
**prevents** [1] - 15:23
**preview** [4] - 18:22, 18:23, 20:18, 20:24
**previews** [1] - 18:23
**principle** [4] - 21:23, 30:8, 33:11, 33:13
**principled** [1] - 25:18
**private** [1] - 18:10
**problem** [5] - 3:23, 12:20, 14:25, 24:20
**proceeding** [1] - 30:24
**proceedings** [1] -

35:18
**process** [15] - 4:13, 6:10, 6:12, 6:14, 18:22, 18:23, 18:24, 20:18, 20:19, 20:24, 21:6, 24:7, 29:4, 32:3
**program** [7] - 9:14, 9:15, 12:18, 14:25, 15:1, 15:2, 33:25
**programming** [1] - 9:25
**programs** [2] - 9:23, 29:14
**prohibit** [1] - 7:12
**prohibited** [1] - 18:15
**proposition** [2] - 8:21, 28:3
**provide** [3] - 3:10, 3:17, 4:3
**provided** [1] - 31:11
**provision** [1] - 5:12
**provisions** [1] - 5:20
**public** [1] - 23:15
**published** [1] - 32:25
**put** [1] - 13:20
**puts** [1] - 31:1
**putting** [1] - 22:6

## Q

**quality** [5] - 3:18, 11:8, 12:19, 14:21, 33:25
**Quality** [1] - 3:10
**questions** [2] - 20:20, 29:20
**quite** [3] - 22:25, 24:5, 29:15
**quote** [3] - 6:19, 27:17, 31:15

## R

**raised** [3] - 24:10, 29:25, 33:20
**range** [1] - 24:17
**rather** [2] - 31:9, 35:10
**rating** [2] - 20:10
**Rating** [24] - 3:7, 4:2, 5:6, 9:14, 14:14, 14:15, 14:20, 14:24, 15:1, 15:10, 15:23, 16:17, 17:17, 17:19, 18:17, 23:12, 23:14, 23:15, 26:21, 30:11, 33:4, 33:5, 33:9, 33:12
**Ratings** [5] - 3:18, 19:1, 20:21, 27:18, 32:21
**rationale** [5] - 21:5,

23:21, 31:11, 32:3, 32:5
**RDR** [3] - 1:23, 35:15, 35:22
**read** [2] - 11:10, 24:2
**reading** [2] - 3:22, 24:2
**real** [1] - 10:15
**really** [10] - 10:3, 23:2, 24:24, 25:3, 26:3, 27:14, 28:1
**reason** [3] - 14:6, 22:13, 23:8
**reasonably** [1] - 32:2
**reasoned** [2] - 30:6, 31:3
**reasons** [3] - 22:4, 22:15, 32:22
**recalculate** [2] - 16:18, 33:4
**recalculated** [1] - 33:9
**recalculation** [1] - 33:10
**receive** [2] - 23:11, 23:14
**receiving** [1] - 30:13
**recess** [1] - 35:10
**reciting** [1] - 31:13
**record** [9] - 2:8, 7:22, 14:18, 15:5, 18:13, 19:4, 19:21, 27:22
**reduced** [1] - 3:11
**refer** [1] - 15:15
**reference** [1] - 6:11
**referred** [2] - 11:1, 11:2
**refers** [1] - 15:25
**reflection** [2] - 3:18, 14:21
**regard** [1] - 25:11
**regarded** [3] - 19:23, 20:1, 20:3
**regarding** [2] - 20:3, 22:2
**regs** [1] - 16:10
**regulation** [10] - 4:6, 4:10, 4:13, 5:5, 6:12, 8:4, 8:5, 18:21, 27:1, 27:5
**regulations** [27] - 3:8, 3:16, 4:2, 6:3, 6:4, 7:15, 8:15, 8:17, 8:23, 9:1, 9:5, 10:18, 18:1, 20:24, 21:14, 27:11, 28:3, 28:10, 28:13, 28:17, 28:20, 31:1, 31:20, 31:23, 33:3, 34:5, 34:10
**regulatory** [2] - 23:4, 27:17

41

**reiterates** [1] - 6:9
**reject** [1] - 17:22
**relate** [1] - 5:15
**related** [2] - 11:21, 33:17
**relates** [1] - 12:18, 33:24
**relevance** [1] - 15:10
**relevant** [1] - 29:6
**relying** [1] - 34:3
**remained** [1] - 17:17
**remand** [2] - 32:12, 32:18
**remanding** [1] - 32:15
**remedy** [1] - 32:12
**remind** [1] - 16:5
**report** [2] - 34:7, 34:9
**REPORTER** [2] - 3:21, 35:13
**Reporter** [3] - 1:23, 1:23, 35:23
**represent** [1] - 2:10
**reprogram** [1] - 29:9
**request** [3] - 19:14, 20:16
**require** [2] - 17:19, 25:10
**required** [9] - 4:14, 6:4, 18:6, 18:19, 25:22, 32:8, 34:7, 34:9
**requirement** [1] - 21:17
**requirements** [2] - 20:22, 20:25
**requires** [1] - 27:5
**resolution** [1] - 4:23
**resolve** [1] - 7:8
**respect** [2] - 5:11, 29:8
**respectfully** [1] - 21:24
**responded** [1] - 19:2
**result** [2] - 10:23, 23:6
**results** [2] - 6:21, 30:19
**RICHTER** [1] - 1:14
**Roddy** [1] - 2:22
**Room** [2] - 1:24, 35:24
**rule** [4] - 11:13, 26:17, 30:14, 30:15
**rules** [1] - 25:20
**ruling** [1] - 33:17
**RYAN** [1] - 1:19

## S

**SAYED** [1] - 1:12
**Scan** [1] - 32:24
**score** [1] - 17:15
**scored** [2] - 25:8,
25:25
**scores** [6] - 5:7, 17:23, 21:18, 25:2, 26:4, 27:22
**second** [2] - 19:9, 24:19
**Section** [4] - 18:22, 20:23, 26:17, 28:11
**Sections** [2] - 21:15, 22:9
**see** [1] - 3:22
**seem** [1] - 10:15
**sense** [3] - 23:2, 26:22, 28:2
**sent** [1] - 34:17
**sentence** [2] - 19:11, 20:13
**separately** [2] - 33:18, 34:9
**September** [3] - 15:8, 17:11, 18:24
**service** [1] - 30:13
**Services** [2] - 2:5, 17:1
**SERVICES** [1] - 1:6, 1:20
**services** [8] - 3:7, 3:11, 3:12, 14:10, 14:13, 14:16, 14:19, 27:7
**set** [4] - 16:17, 18:21, 18:22, 23:21
**sets** [2] - 6:10, 8:23
**settlement** [1] - 4:24
**several** [2] - 4:19, 4:25
**shares** [1] - 14:2
**sharing** [1] - 3:12
**shed** [1] - 27:21
**SHEPPARD** [1] - 1:14
**shows** [1] - 14:19
**side** [3] - 15:15, 15:18, 25:11
**sides** [1] - 18:4
**signing** [2] - 12:22, 14:11
**similar** [1] - 32:22
**simple** [1] - 32:14
**single** [1] - 34:1
**situation** [1] - 5:10
**situations** [1] - 10:7
**skilled** [1] - 29:15
**slow** [1] - 3:21
**small** [1] - 29:11
**SNP** [5] - 6:15, 6:17, 15:2, 19:15, 21:4
**sooner** [1] - 35:9
**sorry** [4] - 18:3, 19:9, 26:19, 26:25
**Sorry** [1] - 3:23
**sort** [7] - 20:19, 22:13, 24:7, 24:17, 25:1,
29:4, 29:5
**speaks** [1] - 6:1
**special** [25] - 13:6, 13:8, 13:9, 14:3, 14:13, 14:15, 14:19, 17:12, 19:22, 21:11, 22:23, 24:13, 24:15, 25:22, 25:24, 26:8, 26:12, 26:18, 26:20, 26:24, 27:3, 27:4, 27:7, 27:9, 27:12
**Special** [2] - 2:22, 17:7
**specific** [10] - 5:13, 5:20, 11:12, 11:14, 11:17, 12:1, 12:18, 21:22, 32:9, 33:24
**specifically** [2] - 11:25, 21:23
**speed** [1] - 29:15
**spends** [1] - 31:13
**stand** [2] - 28:3, 35:10
**stands** [2] - 16:5, 17:3
**Star** [29] - 3:7, 3:17, 4:2, 5:6, 9:14, 14:14, 14:15, 14:20, 14:24, 15:1, 15:10, 15:23, 16:17, 17:17, 17:19, 18:17, 19:1, 20:21, 23:12, 23:14, 26:21, 27:18, 30:11, 32:21, 33:4, 33:5, 33:9, 33:12
**stars** [6] - 17:16, 17:17, 17:21, 25:8, 25:25
**start** [4] - 3:3, 4:10, 6:14, 30:1
**started** [2] - 4:19, 18:5
**starters** [1] - 33:15
**statement** [1] - 21:3
**States** [2] - 17:7, 35:23
**STATES** [2] - 1:1, 1:10
**statutory** [1] - 3:17
**stenographic** [1] - 35:17
**step** [5] - 6:10, 6:11, 6:14, 6:19
**Step** [1] - 6:14
**still** [4] - 8:1, 8:17, 8:18, 31:2
**stop** [1] - 12:24
**Street** [1] - 1:17
**strong** [1] - 31:7
**stronger** [1] - 14:8
**stuff** [1] - 3:13
**subject** [1] - 18:11
**submit** [5] - 6:21, 15:12, 17:16, 29:1, 29:6
**submitted** [1] - 29:17
**submitting** [1] - 15:24
**substance** [1] - 19:17
**substantial** [1] - 9:13
**subsumed** [4] - 10:17, 11:5, 13:7, 13:24
**sufficient** [2] - 20:15
**sufficiently** [1] - 20:12
**suggested** [1] - 22:19
**suing** [1] - 33:11
**sum** [2] - 19:17, 19:20
**summary** [3] - 3:14, 29:21
**Supp** [1] - 33:2
**supplemental** [1] - 3:10
**supported** [2] - 21:13, 35:2
**surfaced** [1] - 24:6
**survive** [1] - 14:8
**surviving** [25] - 6:16, 12:4, 12:21, 13:7, 13:8, 13:9, 13:25, 14:12, 14:16, 14:20, 14:21, 15:11, 17:13, 21:10, 21:19, 22:21, 23:1, 24:15, 25:21, 26:6, 26:7, 26:19, 26:24, 27:4
**SW** [1] - 1:21
**system** [4] - 15:23, 17:5, 23:16, 29:2

## T

**table** [1] - 2:21
**task** [1] - 29:12
**technical** [29] - 4:8, 5:13, 5:17, 6:8, 7:12, 8:8, 9:3, 10:3, 10:7, 11:11, 11:14, 15:13, 15:14, 15:16, 15:20, 16:10, 18:6, 18:15, 19:19, 21:21, 28:7, 28:9, 28:10, 28:25, 32:23, 33:21, 34:21, 34:23, 35:4
**tens** [2] - 3:9, 9:13
**terminate** [2] - 22:16, 22:17
**terminated** [28] - 6:25, 7:13, 10:4, 10:16, 10:24, 10:25, 11:2, 11:5, 16:13, 18:15, 19:19, 19:24, 20:2, 20:4, 21:25, 22:3, 22:4, 22:8, 22:22, 23:3, 23:11, 23:13, 23:20, 24:1, 24:3, 25:3, 28:21, 29:3
**terminates** [1] - 23:13
**termination** [10] - 6:6, 6:20, 8:6, 10:13, 10:19, 22:10, 23:7, 23:8, 23:9, 35:1
**terminations** [1] - 22:11
**terms** [1] - 32:2
**terse** [1] - 31:10
**Texas** [1] - 33:6
**text** [6] - 3:16, 31:23, 34:4, 34:20, 34:23, 35:4
**THE** [106] - 1:1, 1:1, 1:10, 2:2, 2:13, 2:16, 2:18, 2:25, 3:2, 3:5, 3:21, 3:25, 4:5, 4:10, 4:12, 4:16, 4:21, 5:4, 5:17, 5:21, 5:25, 6:23, 7:9, 7:16, 7:24, 8:3, 8:8, 8:10, 8:16, 8:20, 8:25, 9:7, 9:16, 9:20, 10:1, 10:11, 10:14, 11:4, 11:18, 11:22, 12:2, 12:11, 12:14, 12:24, 13:1, 13:4, 13:6, 13:14, 13:18, 13:22, 14:1, 14:5, 14:9, 14:23, 15:4, 15:8, 15:21, 16:2, 16:5, 16:8, 16:19, 16:21, 16:24, 17:2, 18:2, 18:4, 18:19, 19:5, 19:10, 19:13, 19:17, 19:25, 20:5, 21:2, 21:20, 22:5, 23:18, 23:23, 24:5, 24:23, 25:13, 26:6, 26:14, 26:22, 27:1, 27:13, 28:6, 28:18, 28:23, 29:7, 29:11, 29:18, 29:23, 30:3, 30:7, 30:14, 30:16, 30:22, 31:4, 31:9, 31:24, 32:11, 33:8, 34:11, 35:6, 35:8
**theory** [1] - 25:11
**therefore** [1] - 16:14
**they've** [2] - 34:25, 35:3
**three** [1] - 17:21
**tied** [2] - 12:12, 12:13
**Tifenn** [1] - 2:12
**TIFENN** [1] - 1:13
**today** [4] - 2:3, 3:6, 17:10, 31:6
**together** [2] - 13:20, 28:3
**took** [4] - 6:23, 12:13, 15:1, 18:1

**top** [1] - 16:6
**touch** [1] - 28:24
**traditional** [1] - 4:4
**TRANSCRIPT** [1] - 1:9
**transcript** [2] - 35:17, 35:18
**treat** [2] - 9:10, 23:2
**treated** [2] - 4:25, 34:14
**treating** [2] - 9:23, 9:24
**true** [7] - 3:18, 7:14, 16:1, 25:2, 30:25, 35:16, 35:18
**trying** [5] - 4:22, 7:7, 7:9, 7:19, 26:2
**turn** [1] - 3:19
**two** [11] - 5:5, 6:10, 6:11, 6:14, 11:9, 13:4, 15:12, 18:23, 21:8, 34:2
**two-step** [4] - 6:10, 6:11, 6:14

## U

**U.S** [2] - 1:24, 2:23
**unable** [3] - 15:11, 29:1, 29:5
**unchanged** [1] - 14:20
**under** [9] - 6:4, 6:14, 9:8, 9:14, 9:18, 20:7, 22:7, 30:20, 35:9
**undermine** [1] - 3:17
**unfair** [1] - 15:3
**unique** [3] - 12:16, 23:7, 23:8
**UNITED** [2] - 1:1, 1:10
**United** [3] - 17:7, 33:6, 35:23
**unlike** [2] - 12:16, 23:8
**unprincipled** [1] - 25:20
**up** [4] - 12:23, 14:11, 29:15, 32:13
**upload** [2] - 15:18, 16:4
**urging** [1] - 7:10
**USAO** [1] - 1:17
**utility** [1] - 23:16

## V

**vacate** [1] - 32:19
**vacated** [3] - 32:20, 32:21, 33:4
**vacating** [1] - 32:14
**vacatur** [2] - 32:12, 32:13
**validate** [1] - 9:12

**validation** [1] - 6:21
**validations** [1] - 20:3
**varied** [1] - 22:11
**various** [2] - 22:15, 29:14
**verifications** [1] - 31:16
**via** [2] - 9:2, 29:17
**viewed** [1] - 31:24
**violate** [1] - 3:16
**violated** [2] - 34:4, 35:4
**violates** [2] - 34:20, 34:23
**violation** [1] - 3:8
**VIRGINIE** [1] - 1:13
**vision** [1] - 3:12
**visits** [1] - 12:13

## W

**wait** [3] - 8:25
**Washington** [6] - 1:4, 1:15, 1:18, 1:21, 1:25, 35:25
**Wednesday** [1] - 1:4
**weighted** [1] - 5:7
**welcome** [2] - 2:18, 2:25
**WERNER** [1] - 1:13
**Werner** [1] - 2:12
**Westlaw** [1] - 32:25
**whatsoever** [1] - 31:7
**WHITLEY** [32] - 1:19, 16:23, 16:25, 17:4, 18:3, 18:18, 18:21, 19:9, 19:12, 19:16, 19:20, 20:1, 20:14, 21:7, 21:24, 22:9, 23:19, 23:25, 24:9, 24:24, 25:16, 26:11, 26:15, 26:25, 27:8, 27:14, 28:8, 28:22, 28:24, 29:10, 29:13, 29:19
**Whitley** [4] - 2:22, 16:21, 17:8
**WIGGER** [68] - 1:12, 2:9, 2:15, 3:4, 3:6, 3:23, 4:1, 4:8, 4:11, 4:15, 4:18, 4:22, 5:12, 5:19, 5:22, 6:1, 7:6, 7:14, 7:21, 7:25, 8:5, 8:9, 8:14, 8:18, 8:22, 9:6, 9:8, 9:19, 9:21, 10:9, 10:12, 10:15, 11:10, 11:19, 11:23, 12:7, 12:12, 12:15, 12:25, 13:3, 13:5, 13:13, 13:17,

13:19, 13:23, 14:4, 14:6, 14:18, 14:24, 15:17, 16:1, 16:3, 16:6, 16:16, 16:20, 29:24, 30:4, 30:10, 30:15, 30:21, 30:25, 31:5, 31:12, 32:4, 32:14, 33:15, 34:12, 35:7
**Wigger** [3] - 2:10, 3:2, 29:23
**word** [2] - 24:3, 29:23
**world** [1] - 2:19
**writes** [1] - 15:10
**written** [1] - 21:1

## Y

**year** [8] - 21:12, 21:18, 22:17, 22:19, 22:23, 24:12, 24:19, 25:23
**year's** [2] - 10:23, 23:6
**years** [2] - 5:5, 11:9
**yourself** [1] - 2:7